STATE, Respondent v. LOHFF, Appellant

(214 N.W.2d 80)

(File No. 11300. Opinion filed January 10, 1974)

Rehearing denied February 4, 1974

Brady, Kabeiseman, Light & Reade, Gerald L. Reade, Yankton, for defendant and appellant.

Kermit A. Sande, Atty. Gen., Pierre, Larry F. Hosmer, State's Atty., Yankton, for plaintiff and respondent.

WINANS, Justice.

The defendant was arrested by a police officer of the city of Yankton for the offense of reckless driving under Sec. 14-61 of the Yankton City Code, defined as follows:

"Sec. 14-61. Reckless driving.

Any person who drives a vehicle within the city carelessly or heedlessly, or in disregard of the rights or safety of others, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property, shall be guilty of reckless driving."

This ordinance is similar to state law, SDCL 32-24-1.

On February 10, 1973 at approximately 1:00 a.m., the arresting officer, proceeding north in his squad car on Broadway in the city of Yankton and while situated approximately two city blocks to the south, saw defendant's car come out of a parking lot "of Kip's North and he was traveling west across the northbound lane of traffic." The arresting officer testified that when he observed the vehicle it slid from the outside lane of the northbound traffic into the inside lane of the southbound traffic on Broadway and proceeded south past the officer, who then turned around, pursued and stopped defendant's automobile. The officer observed the defendant and two other persons in the automobile. He asked for and was given defendant's driver's license. He questioned defendant on his driving and while talking to defendant, could smell an odor he believed to be coming from the car. Upon request, defendant got out of his car. The officer observed that defendant's "face was flushed" and his "eyes were bloodshot," and the officer could smell odor on defendant's breath. The officer then "advised the defendant that I was placing him under arrest for reckless driving." The officer then requested that defendant take a breath test and explained to him the implied consent law, following which defendant's car was turned over to the two friends, the defendant was seated in the rear seat of the squad car and taken to the police station. While entering the door of the police station with the defendant, the arresting officer made observations as follows:

"\* \* \* and as we walked through the doors the defendant was on my left and at which time I changed from his right to his left because it is a policy that you don't walk with anybody on the side you carry your weapon. And at the time I changed from his right to his left, I observed the defendant reach into his pocket and remove what I thought to be a plastic bag from his pocket, transferred it over to the right-hand pocket of his jacket."

The officer could not at that time observe what was in the bag. They continued into the station and while another officer was preparing a breath test for defendant, the arresting officer asked defendant to empty his pockets onto the desk. The officer then gave the defendant what he termed a " 'pat' search for a possible weapon". The officer felt a lump in the defendant's right-hand jacket pocket and reached into the pocket and pulled out a plastic bag which he described as "like a baggie, a sandwich bag", which had contents in it. The officer described the contents as a "green substance, dry substance, in the bag and there were seeds and what appeared to be stems in the bag."

At the time the plastic bag was removed from defendant's jacket the only crime he had been charged with by the arresting officer and the only crime he was suspected of committing was the offense of reckless driving and possibly DWI pursuant to the Yankton City Code.

The arresting officer testified that he routinely conducted searches after making arrests for traffic offenses if the person was brought into the police station.

The defendant was tried and convicted of possession of a controlled drug or substance, to-wit: 0.395 ounces of marijuana which possession allegedly occurred on the 10th day of February, 1973 in the County of Yankton, South Dakota, the basis of which was the substance contained in the plastic bag taken from the defendant, as hereinbefore set forth, and from such conviction this appeal is taken.

The assignments of error raise the following questions:

(1) Whether the Trial Court erred in failing to grant Defendant's Motion to Suppress Evidence, to-wit: all marijuana and smoking equipment taken from his person by a City of Yankton police officer upon the grounds and for the reasons that the search and seizure of such evidence was unconstitutional, impermissible and in violation of his constitutional rights in that, among other things, (a) he was merely under arrest for a minor city traffic offense; (b) he was not under legal arrest; (c) he was illegally taken to the Yankton City Police Department under an illegal request for an alcohol-breath test; (d) Yankton City Ordinance, Section 14-27, did not authorize the arresting officer to take Defendant to the Yankton City Police Station, and (e) there was no legal cause to search his person.

(2) Whether the Trial Court erred in the hearing on the Motion to Suppress Evidence in denying Defendant's offer of proof that the police officer who searched Defendant had previously searched an automobile when the driver had been arrested for a minor city traffic offense.

(3) Whether the Trial Court erred in (a) admitting the marijuana evidence; (b) allowing the testimony of the State Chemist, Don Frasch, over objection of the Defendant, and (c) in failing to grant Defendant's Motion to Dismiss upon the ground that there was no legal evidence upon which the Trial Court could convict Defendant.

It is clear from the assignments of error and the argument before this court that defendant's principal contention and the main issue for decision by this court is whether the search and seizure which resulted in the discovery of marijuana following defendant's arrest for reckless driving is permissible. Defendant contends that the search and seizure made in his case was in clear

violation of Amendment IV of the United States Constitution and of Article VI, § 11 of the South Dakota Constitution. Defendant contends that an arrest for a minor traffic violation does not justify a routine search of a motorist's person, either for weapons or contraband, unless the police have probable cause for believing he is armed and dangerous. Defendant's position in this regard is supported by much law. Three principal cases which he cites are as follows: State v. Curtis, 1971, 290 Minn. 429, 190 N.W.2d 631; State v. O'Neal, 1958, 251 Or. 163, 444 P.2d 951; United States v. Robinson, 1972, 153 U.S. App.D.C. 114, 471 F.2d 1082.

It is true that at the time of the argument of this case the case law on search and seizure under facts somewhat similar to those under which the search and seizure of this defendant was made was in rather hopeless conflict. However, on the day this case was argued, the United States Supreme Court handed down two opinions which we believe are decisive of this appeal insofar as the search and seizure of defendant are concerned. In United States, petitioner v. Robinson, 1973, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427, the United States Supreme Court reversed United States v. Robinson, 1972, 153 U.S. App.D.C. 114, 471 F.2d 1082 cited in appellant's brief. In Robinson, supra, Officer Richard Jenks observed defendant driving a 1965 Cadillac in the District of Columbia. Jenks, as a result of previous investigation following a check of Robinson's Operator's Permit four days earlier, determined there was a reason to believe Robinson was operating a motor vehicle after the revocation of his operator's permit. This is an offense defined by statute in the District of Columbia which carries both a mandatory minimum jail term and a mandatory minimum fine or both. In the opinion by the Supreme Court it is accepted that Jenks had probable cause to arrest Robinson and that he effected a full custody arrest.

> "In accordance with procedures prescribed in Police Department instructions, Jenks then began to search respondent. He explained at a subsequent hearing that he was 'face to face' with the respondent, and 'placed [his] hands on [the respondent], my right hand to his left breast like this (demonstrating) and proceeded to pat him down thus (with the right hand).' During this pat-

down, Jenks felt an object in the left breast pocket of the heavy coat respondent was wearing, but testified that he 'couldn't tell what it was' and also that he 'couldn't actually tell the size of it.' Jenks then reached into the pocket and pulled out the object, which turned out to be a 'crumpled up cigarette package.' Jenks testified that at this point he still did not know what was in the package:

> 'As I felt the package I could feel objects in the package but I couldn't tell what they were. . . . I knew they weren't cigarettes.'

The officer then opened the cigarette pack and found 14 gelatin capsules of white powder which he thought to be. and which later analysis proved to be, heroin. Jenks then continued his search of respondent to completion, feeling around his waist and trouser legs, and examining the remaining pockets. The heroin seized from the respondent was admitted into evidence at the trial which resulted in his conviction in the District Court.

The opinion for the plurality judges of the Court of Appeals, written by Judge Wright, the concurring opinion of Chief Judge Bazelon, and the opinion for the dissenting judges, written by Judge Wilkey, gave careful and comprehensive treatment to the authority of a police officer to search the person of one who has been validly arrested and taken into custody. We conclude that the search conducted by Jenks in this case did not offend the limits imposed by the Fourth Amendment, and we therefore reverse the judgment of the Court of Appeals."

The opinion written by Mr. Justice Rehnquist giving much historical background and citing ample authority in the decided cases, further holds:

"A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment.

## IV

The search of respondent's person conducted by Officer Jenks in this case and the seizure from him of the heroin, were permissible under established Fourth Amendment law. While thorough, the search partook of none of the extreme or patently abusive characteristics which were held to violate the Due Process Clause of the Fourteenth Amendment in Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). Since it is the fact of custodial arrest which gives rise to the authority to search, it is of no moment that Jenks did not indicate any subjective fear of the respondent or that he did not himself suspect that respondent was armed. Having in the course of a lawful search come upon the crumpled package of cigarettes, he was entitled to inspect it; and when his inspection revealed the heroin capsules, he was entitled to seize them as 'fruits, instrumentalities, or contraband' probative of criminal conduct. Harris v. United States, *supra,* 331 U.S. [145], at 154-155, 67 S.Ct. [1098] at 1103-1104; [91 L.Ed. 1399] Warden v. Hayden, 387 U.S. 294, 299, 307, 87 S.Ct. 1642, 1646, 1650, 18 L.Ed.2d 782 (1967); Adams v. Williams, *supra,* 407 U.S. 143, at 149, 92 S.Ct. [1921] at 1924. [32 L.Ed.2d 612]. The judgment of the Court of Appeals holding otherwise is Reversed."

■ The arrest of the defendant in our case for reckless driving was based on probable cause inasmuch as the officer

observed the driving of the defendant and there is no doubt that he took him into lawful custody by informing him that he was under arrest and taking him to the police station where the search was made. Also, in the case of Gustafson v. State of Florida, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456, decided the same day, Mr. Justice Rehnquist, writing for the court, again held that the full search of the person of the suspect made incident to the custodial arrest did not violate the Fourth and Fourteenth Amendments of the United States Constitution and further held that it was of no constitutional significance that contrary to the situation in Robinson, supra, police regulations did not require that Gustafson be taken into custody or establish the conditions under which a full scale body search should be conducted, and it was further held that it was not required nor relevant that the arresting officer feared the arrested person or suspected that he was armed since it is the fact of custodial arrest which gives rise to the authority search. Gustafson had been arrested for failure to have his driver's license in his possession. The court held:

> "It is sufficient that the officer had probable cause to arrest the petitioner and that he lawfully effectuated the arrest and placed the petitioner in custody. In addition, as our decision in *Robinson* makes clear, the arguable absence of 'evidentiary' purpose for a search incident to a lawful arrest is not controlling. Id., at —, 94 S.Ct. at 491. 'The authority to search a person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect.' Id., at —, 94 S.Ct. at 492."

These two cases dispose of the principal contention made in our case.

■ Defendant also has assigned as error the fact that the arresting officer should not have taken the defendant to the police

station, and cites Yankton City Ordinance 14-27 as authority for his contention that the arresting officer lacked authority to arrest the defendant, which section reads as follows:

> "*Sec. 14-27. Manner of arrest.*
>
> Except in cases of driving while intoxicated or under the influence of intoxicating liquor or any stupefying or exhilarating drug and except in the more serious and aggravated cases of speeding or careless and reckless driving and except when reasonably necessary to secure appearance, a person charged with violation of a provision of this chapter or other traffic ordinance of the city by a police officer need not be arrested in the regular manner but may first be given an opportunity to appear voluntarily to answer for such traffic violation. (Rev. Ords.1949, § 11.0201; Ord. No. 318, § 1, 8-12-68)"

A close reading of this ordinance reveals that its purpose is to permit, in certain situations, variances from the established arrest procedure. The language of the ordinance is permissive. It did not require the arresting officer not to make an arrest in the regular manner. A police officer still desiring to adhere to the formal arrest procedure with all its accompanying safeguards to the suspect is not prevented from doing so by this ordinance.

We have carefully reviewed the defendant's other assignments of error and conclude they are without merit.

Judgment affirmed.

All the Justices concur.