THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DOMINGO RAMIREZ, Defendant-Appellant.

First District (2nd Division)   No. 1—90—3528

Opinion filed June 15, 1993.

Rita A. Fry, Public Defender, of Chicago (Carlos J. Gonzalez, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Theodore F. Burtzos, and John R. Roe, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SCARIANO delivered the opinion of the court:

Defendant Domingo Ramirez was arrested and charged by information for possession of more than 15 but less than 100 grams of cocaine with intent to deliver. (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(a)(2).) Prior to trial, he moved to quash his arrest and suppress any evidence which had directly or indirectly resulted from that allegedly illegal arrest. With the agreement of the parties, the court took the suppression motion with the case, conducting a hearing on it concurrently with the trial and resolving it based on the evidence adduced at trial. Defendant then filed a written waiver of his right to be tried by a jury.

The State first called Chicago police officer Gerald Droba, who had arrested defendant. He related that on December 30, 1989, he and his partner, while on "plainclothes" detail, were assigned to a beat patrol in an unmarked car, and while heading south on Wood Street near 56th Street on the city's south side, they realized that the vehicle in front of them had no license plates, nor did it have a tempo-

rary vehicle registration card affixed to its rear window. After curbing the vehicle, the two approached the driver, whom the officer identified for the record as being defendant. Droba asked defendant to alight from the auto, informed him that he was an officer and advised him that he had been stopped because he had no visible vehicle registration on his car. Defendant responded that he had a temporary registration card, which the officers subsequently found lying on the rear deck of the auto. The officer requested defendant's driver's license, and upon learning that he did not have it with him at the time, Droba told him he was under arrest, advised him of his rights as required by *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, and as his partner placed handcuffs on defendant, Droba conducted a "pat-down" search of him.

According to Droba, the purpose of the search was primarily to look for weapons, but as he felt down defendant's leg, he came upon what he described as a large lump proximate to his shin. Further investigation revealed that the lump was a quantity of white powder, which he suspected to be cocaine, wrapped in clear plastic, which the officer estimated to weigh about an ounce. Later, the parties stipulated that laboratory tests affirmatively established that the substance was cocaine and that the total weight of the amount seized was 27.44 grams. The search incident to defendant's arrest also disclosed that he was carrying $575 that evening.

The officer testified that he issued a citation to defendant charging him with failure to produce a driver's license upon request, the absence of license plates and failure to display a registration sticker issued by the City of Chicago. Through a terminal in the squadrol, he later learned that defendant was validly licensed by the State to operate a motor vehicle.

Droba and his partner completed the arrest of defendant and placed him in the back of their car, where he was joined by Droba's partner. The three sat in the vehicle for a short while after which Droba asked defendant "What do you want to tell us about what I found?" Defendant replied "Please let me go. I was just delivering the powder to a black dude on 56th and Wood. I don't sell cocaine. He sells cocaine. I was just delivering it for $50."

When asked, Droba did not recall that there was anyone within a 40-foot radius of where these events had transpired. On cross-examination, he admitted that since he was in an unmarked car when he curbed defendant, he did not have his "ticket book" with him at the scene and that prior to stopping defendant and investigating further, he was unaware that defendant had committed any traffic offense

other than neglecting to display plates or the temporary registration card. Droba also stated that he did not remember if he actually filled out the citation or if another officer completed the form; and he agreed that prior to the arrest, he had no warrant for defendant's arrest or a search warrant for the car. He further conceded that until he felt the lump in his sock, he had no reason to believe that defendant carried narcotics with him.

At the close of the State's case, defendant moved for a "directed finding"[1] in his favor, and after it was denied, took the stand in his own defense. He testified that on the night in question, he was driving southbound on Wood Street in an automobile he had only recently purchased, which he claimed bore the requisite temporary license sticker properly taped to its rear window. While signalling for a right-hand turn, he noticed a car next to him. After turning the corner, the other auto turned as well, remaining behind him, and a short while later, it flashed its lights, which he presumed was intended to direct him to pull over to the side of the street. Defendant parked his car and complied with the officer's instruction to exit the vehicle. He inquired as to why he was stopped, whereupon the officer asked him "What are you doing in this neighborhood?" He told the officer that he was on his way to visit a friend, Solo Lafava, who resided in the 5600 block of south Honore Avenue, which is one block west of Wood Street. The officer then proceeded to search defendant, who again inquired as to why he was stopped, and was this time informed that it was because he had no license plates. Defendant immediately pointed out that he had the sticker in the window and which he recalled seeing still prominently displayed while he spoke to the officer.

Defendant denied ever being asked for his operator's license, but was unsure if he had it with him on the night of his arrest. He testified that while Droba searched his person, the other officer searched the front seat of his vehicle. Once Droba completed his search of defendant, he left him unattended and looked about the rear seat, where he found a plastic bag filled with white powder. The officer announced that he "got something," handcuffed defendant, placed him

---

[1] We reiterate our puzzlement over what sort of procedural device could allow the court in a bench trial, at the urging of the parties, to direct itself to "find" something, and we refer the litigants to our previous discussion of "directed findings" in nonjury cases in *People v. Davilla* (1992), 236 Ill. App. 3d 367, 373 n.3, 603 N.E.2d 666, 669 n.3, in an attempt to convince that even if such a device were feasible, as far as we are aware, no such procedure is offered to litigants by the laws of this State.

in the squad car and drove him to the station. Although he agreed that Droba had said something to him while they sat in the squadrol, he denied that he confessed to the officer that he was a drug courier. He told the court that he remained silent while being transported to the station.

Defendant recalled that once they arrived at the stationhouse, Officer Droba instructed two other uniformed policemen to write up traffic citations naming defendant. Defendant concluded his direct examination by informing the court that while he was being arrested three individuals, Solo Lafava, Gilbert Garcia and Royce Brown, witnessed the event. During cross-examination, defendant explained that the $575 he carried the night of the arrest was from his pay check, which he had cashed near the time of the arrest, although he did not remember precisely when he was paid or when he cashed the check. The assistant State's Attorney elicited that while Gilbert Garcia, one of the purported witnesses to the arrest, was his brother, with whom he resided, defendant said nothing to him or the other two while being arrested, although the three were, at most, seven or eight feet from him and the police. He also admitted that the officers said nothing to the three men while they completed the arrest.

Royce Brown testified that on the night of the arrest he was visiting his ex-wife, who resided in the 5600 block of south Honore Avenue, and that on his way home, he stopped at the home of a man he knew as Junior or JR. There he met Gilbert, whose last name he did not know. He related that the three were in JR's yard when he saw the police curb defendant's car and heard defendant ask why he was stopped, to which a policeman responded by asking why defendant, an Hispanic, was in a neighborhood where African-Americans predominate. Gilbert Garcia testified that he was the half-brother of defendant, and his testimony was generally consistent with that offered by defendant and Brown. He added that it was common for his brother to carry large sums of money with him after being paid.

The court denied defendant's motion to suppress, finding that the missing license plates justified the initial stop of the vehicle, and when, after being stopped, defendant failed to exhibit his driver's license upon demand, the officers were authorized to arrest him, which in turn sanctioned a search incident thereto, the fruit of which was the ball of cocaine. It found, accordingly, that the State had proved beyond a reasonable doubt that defendant committed the crime as charged, and it sentenced him to six years in the custody of the Illinois Department of Corrections.

On appeal, defendant apparently concedes that, under existing Illinois law, the arresting officers were authorized to stop him initially for his failure to display valid State license plates in violation of section 3—701 of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½, 3—701; see *People v. Tylkowski* (1988), 171 Ill. App. 3d 93, 98, 524 N.E.2d 1112, 1116 (holding that the absence of license plates on the car of a suspect for murder justified his initial on-the-street detention by police); see also *People v. Palmer* (1976), 62 Ill. 2d 261, 263, 342 N.E.2d 353, 354 (observing that the "absence of license plates suggests a serious violation of the law which justifies a search"); and he does not suggest that the officers acted outside their authority when, in reaction to his failure to show a valid driver's license, they placed him under a full custodial arrest. (Ill. Rev. Stat. 1991, ch. 95½, par. 6—112; see *People v. Perry* (1990), 204 Ill. App. 3d 782, 562 N.E.2d 618 (noting that the custodial arrest of the defendant for failure to produce a valid driver's license was lawful and proper).) Rather, defendant takes issue with the laws of Illinois which authorized the police to arrest him and to discover, while conducting the search incident to the arrest, the quantity of cocaine he possessed. Borrowing heavily from the writings and research of Professor LaFave (2 W. LaFave, Search & Seizure §5.1(h) (2d ed. 1987 & Supp. 1993)), the essence of his argument is that the fourth amendment does not give police the unbridled discretion to arrest an individual merely because he may have committed any act which is considered a crime. Instead, according to defendant, the amendment prohibits all seizures, even those which follow the commission of offenses, which are not reasonable.

Defendant defines "reasonableness" in this context as a balance struck between the State's need for a full custodial arrest versus the extent to which such an arrest intrudes on an individual's expectation of privacy. Under defendant's approach, unless the State can assert a legitimate interest which can be satisfied exclusively by the arrest of an individual who it has probable cause to believe committed a crime, a seizure of that person would be unreasonable, and thus, any evidence gathered as a result of that illegal seizure would be the excludable "fruit of the poisonous tree." He asks this court to engraft a "legitimate interest" test on the fourth amendment and hold thereby that since the State's interest of ensuring that he appear for trial on a relatively minor offense could have been secured by much less intrusive means, such as a promise to appear signed by defendant, there was no imperative to arrest him. Therefore, he argues, his conviction must be reversed because he was found guilty on the strength alone

of the evidence discovered as the product of what he describes as an illegal seizure.

In support of this argument, defendant cites cases from other jurisdictions which have held that on the particular facts of the case, the fourth amendment was offended by the custodial arrest of an individual because the governmental interest at stake could have been satisfied by something less than a seizure. In *State v. Klinker* (1975), 85 Wash. 2d 509, 537 P.2d 268, the Washington State Supreme Court ruled unconstitutional a State statute which authorized the issuance of an arrest warrant and subsequent seizure of a putative father in order to secure his attendance at a hearing held to determine paternity. The court reasoned that the fourth amendment commands that a seizure be reasonable, which can be met only where the arrest "serve[s] some governmental interest which is adequate to justify the imposition on the liberty of the individual." *Klinker*, 85 Wash. 2d at 519, 537 P.2d at 277.

However, in *Klinker*, the State was depriving an individual of his liberty in order to secure his presence at a filiation hearing which under Washington law was a civil action. This is also true in other instances where a court found a full custodial arrest to be unreasonable because the State could not advance an interest of sufficient weight to warrant the great intrusion on an individual which a custodial arrest entails. For example, in *Barnett v. United States* (D.C. 1987), 525 A.2d 197, the court suppressed marijuana which was discovered on the defendant's person while he was being searched incident to a custodial arrest. The court found that the seizure was unreasonable in a constitutional sense because there were insufficient facts before the arresting officer for him to conclude that the individual had committed a misdemeanor. At best, the officer had enough facts to warrant the issuance of a ticket for a civil infraction. The court determined that a civil offence was not a sufficient justification to seize the individual and that consequently the search incident to it was necessarily infirm.

The reasoning of those cases does not, however, compel us to find that the seizure in the instant case was unreasonable because defendant was seized for what the officer had probable cause to believe was the commission of what our legislature has determined to be a misdemeanor, the driving of a motor vehicle without being licensed. (Ill. Rev. Stat. 1991, ch. 95½, par. 6—601(a).) Even at common law a police officer was authorized to arrest an individual who committed a misdemeanor in the officer's presence. (See 5 Am. Jur. 2d *Arrest* §§26 through 31 (1962).) The United States Supreme Court appears to

have approved of and to have found constitutional for the purposes of the fourth amendment the common law rule in *United States v. Watson* (1976), 423 U.S. 411, 46 L. Ed. 2d 598, 96 S. Ct. 820. Accordingly, even were we to adopt defendant's legitimate interest test for fourth amendment seizures, his test would be satisfied here, for the commission of a crime alone has long been recognized as providing the necessary predicate to seize an offender, even where his offense was relatively minor. Therefore, the approach he advocates, which has been applied in civil contexts to find seizures of individuals unreasonable, is inapplicable where the seizure is effected in response to the commission of an act which the legislature has chosen to define as a crime. (*Cf. People v. Bryant* (1989), 128 Ill. 2d 448, 456, 539 N.E.2d 1221, 1225 (admonishing courts to be especially reluctant to invalidate criminal statutes because "[t]he legislature has been empowered to declare and define conduct constituting a crime").) In fact, one may conclude from the reasoning of the court in *Barnett* and the emphasis it placed on the civil character of the defendant's offense that it would have found no constitutional infirmity with the defendant's arrest and subsequent search had he refused to provide the officer his name and address, which under the applicable statute would have then turned the civil offense for which he was cited into a misdemeanor.

Moreover, the case at bar is indistinguishable from *People v. Morrison* (1978), 57 Ill. App. 3d 468, 373 N.E.2d 520, where this court held that an arrest was valid where, due to the defendant's inability to produce a valid license upon demand, an officer had probable cause to believe the individual had committed the Class A misdemeanor of driving without a valid license in violation of section 6—601(a) of the Illinois Vehicle Code. (Ill. Rev. Stat. 1975, ch. 95½, par. 6—601(a).) The court found it of no consequence that sometime after being arrested and searched, the defendant was able to produce a valid license substitute to dispel the officer's initial belief that she had committed a misdemeanor; all that mattered for purposes of the fourth amendment was that at the precise moment the officer perfected the custodial arrest and searched the defendant, he had the requisite probable cause to believe that criminality was afoot. *People v. Montgomery* (1986), 112 Ill. 2d 517, 494 N.E.2d 475 (holding that the test for probable cause is whether the facts and circumstances known to the officer at the time of the seizure would lead the reasonably prudent person to believe a crime had been committed).

Here when the officers placed defendant under a full custodial arrest, they possessed ample reason to think that defendant, much like

the defendant in *Morrison*, had committed the misdemeanor of operating a vehicle without securing a license from the State. It was not until after they had discovered the cocaine in a valid search incident to the arrest for the misdemeanor that they learned that defendant was properly licensed but merely neglected to possess the evidence of it at the time of his arrest. Consistent with *Morrison*, since defendant was placed under custodial arrest for a misdemeanor committed in the officer's presence, the fourth amendment was not offended merely because the officer could have issued a citation rather than arrest him in order to secure his presence at trial. (See *United States v. Franklin* (8th Cir. 1984), 728 F.2d 994 (holding that a full custodial arrest for a minor traffic violation is not unconstitutionally unreasonable where the violation (failure to display license plates, inspection sticker and local permit) was committed in officer's presence); see also *State v. Lohff* (1974), 87 S.D. 693, 214 N.W.2d 80 (dismissing with little comment the defendant's assertion that because an officer, under State law, could have given him a citation rather than placing him in custody for a traffic violation, his arrest was unreasonable).) Thus, the circuit court did not err by denying defendant's motion to suppress the cocaine; accordingly, its finding him guilty, based as it was on that evidence, is also affirmed.

Affirmed.

McCORMICK, P.J., and DiVITO, J., concur.