THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STANCE STRONG, Defendant-Appellant.

Third District No. 3—99—0905

Opinion filed October 12, 2000.

808

Mark D. Fisher, of State Appellate Defender's Office, of Ottawa, for appellant.

Michael Kick, State's Attorney, of Kankakee (John X. Breslin and Richard T. Leonard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOMER delivered the opinion of the court:

Defendant was convicted in a bench trial of armed violence (720 ILCS 5/33A—2 (West 1994)) and possession with intent to deliver a controlled substance (720 ILCS 570/401(c)(2) (West 1994)). He was sentenced to concurrent terms of six years in prison. Defendant appeals, contending: (1) the trial court erred in refusing to suppress his confession; (2) the State failed to show beyond a reasonable doubt that he was guilty of armed violence; and (3) his separate convictions and sentences for the two offenses violate one-act, one-crime principles. Because the trial court erred in admitting defendant's confession, we reverse his convictions and remand for a new trial.

## FACTS

Defendant was arrested and charged with armed violence (720 ILCS 5/33A—2 (West 1994)) and possession with intent to deliver a controlled substance (720 ILCS 570/401(c)(2) (West 1994)). Alleging that the police failed to comply with *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), and that a statement he had given to police was involuntary, defendant filed a motion to suppress that statement.

At the hearing on the motion to suppress, members of the Kankakee Area Metropolitan Enforcement Group (KAMEG) testified that they executed a search warrant at an apartment leased to Monica Myert. Defendant, having arrived in Kankakee a few days earlier to visit Luther Hill, had slept at Myert's apartment following a social gathering the night before. When the KAMEG team entered the apart-

ment, they found Hill asleep on a couch and defendant asleep on the floor of the living room. Defendant's girlfriend, Sherri Caffey, was also found sleeping in the living room. Myert's cousin and the cousin's baby were in a bedroom. The officers handcuffed defendant and Hill, "probably" handcuffed the two women, and seized a gun and a container that had been lying on a coffee table situated between Hill and defendant. The container held several baggies of what was later identified as crack cocaine.

According to Officer Don Barber, defendant signed a rights waiver form and agreed to talk. Initially, defendant denied knowing anything about the gun or the drugs found on the table. However, after Barber told defendant that the women would be arrested and the baby turned over to the Department of Children and Family Services (DCFS) unless someone admitted ownership of the contraband, defendant said that he knew nothing about the gun but that the drugs belonged to Hill.

Officer John McClellan testified that he and Sergeant Robert Bodemer then took defendant into a different room because Officer Barber "wasn't having much luck getting anything talking to anybody." McClellan left the room and, when he returned, informed defendant that Hill had incriminated himself and defendant. Defendant thereupon admitted to having purchased the drugs but he continued to deny knowledge of the gun. Defendant provided a written statement to this effect.

The officers denied having coerced, threatened or made promises to defendant. They all testified that he did not invoke his right to remain silent. McClellan admitted that his initial inclination was to arrest everyone and take them to jail and that the baby would then have to be turned over to DCFS. However, McClellan did not recall threatening defendant with this possibility. Barber admitted he told defendant that the women would be arrested and the baby turned over to DCFS unless someone admitted ownership of the contraband, but he denied having said that to threaten defendant. Bodemer recalled discussing with the other officers whether or not to arrest the women but did not know if that discussion took place in defendant's presence. Bodemer did not hear anyone say anything about DCFS. Officer Samuel Miller heard DCFS mentioned.

Caffey, Hill and defendant all testified that the police threatened that everyone would be arrested and taken to jail, and the baby turned over to DCFS, unless defendant and Hill gave incriminating statements.

The trial court denied defendant's motion to suppress, finding that "the affection [defendant] may have for some young lady does not

relate to the point where he can say that because there was this DCFS threat and the arrest of these women [it] so overwhelmed his mind to the point he was coerced into making statements."

At defendant's bench trial, Officer Alan Swinford testified that the container in which the drugs were found was opaque and only after opening the bottle did he see the bags of what appeared to be cocaine. The container was not checked for fingerprints and any prints on the gun were likely destroyed when Swinford seized it upon entering the apartment.

At trial, Barber testified that, when he began to discuss the drugs with defendant, defendant said he did not want to say anything more to Barber. Barber testified that he told Officer McClellan that defendant did not want to talk.

McClellan testified that he took defendant into another room, told defendant that Hill had incriminated them both and asked defendant to give a written statement. McClellan admitted that Barber "may have" told him that defendant did not want to talk. According to Mc-Clellan, though, Barber "never said that [defendant] wanted to invoke any of his rights or privileges with an attorney or anything."

Caffey and defendant both testified at trial that, when they went to sleep the night before the arrest, they had not seen either the gun or the container on the table.

Caffey testified that she and defendant were "going together" at the time of the arrest. At the time of trial, Caffey was living with defendant and the couple's two children. Caffey testified that defendant was still asleep on the floor when she was shaken awake by the police the following morning. According to Caffey, the police handcuffed her and threatened to take the adults to jail and send the baby to DCFS because the defendant was not cooperating. Defendant said he would do anything the police wanted so no one else would have to go to jail.

Defendant testified that, after he refused to provide a statement, the police asked which of the women was defendant's girlfriend. The police then placed Caffey in handcuffs and told defendant she was going to jail if he did not cooperate. According to defendant, Officer Barber then invented a statement in which defendant admitted to having purchased the drugs. Defendant agreed to sign the statement.

When the State sought to introduce defendant's written statement, defense counsel renewed his objection to its admission. However, the trial court admitted the statement.

## ANALYSIS

■ Initially, we note that defendant failed to file a posttrial motion setting forth his contentions of error. See 725 ILCS 5/116—1 (West

1994). When a defendant fails to comply with the statutory duty to file a posttrial motion, an appellate court's review is limited to constitutional issues that have properly been raised at trial and that can be raised later in a postconviction hearing petition, sufficiency of the evidence, and plain error. *People v. Hollingsead*, 210 Ill. App. 3d 750, 759-60, 569 N.E.2d 216, 222 (1991). Defendant requests that we review any waived issues as plain error or because defense counsel's failure to file a posttrial motion constituted ineffective assistance of counsel.

■ Supreme Court Rule 615(a) provides that plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court. 73 Ill. 2d R. 615(a). Courts may review an issue as plain error where the alleged error was of such magnitude that defendant was denied a fair trial or the evidence presented at trial was closely balanced. *People v. Carlson*, 79 Ill. 2d 564, 576, 404 N.E.2d 233, 238 (1980).

The State contends the evidence was not closely balanced because defendant confessed to having purchased the drugs. Because it is precisely that confession which defendant argues should have been suppressed, however, the State's argument is not persuasive.

■ The only evidence linking defendant to the drugs (other than defendant's confession) was his proximity to the container holding the drugs when the police arrived. This evidence was not sufficient to establish constructive possession where defendant was but one of four adult guests at the residence in which the contraband was found and he was not engaged in any activity suggestive of control over the contraband. See *People v. Heerwagen*, 30 Ill. App. 3d 144, 145, 332 N.E.2d 136, 138 (1975) (constructive possession not proved where contraband was found on premises in plain view but there was no evidence that defendant owned, rented or resided at premises); *cf. People v. Rouser*, 199 Ill. App. 3d 1062, 1065, 557 N.E.2d 928, 930 (1990) (constructive possession established where activities in locked bathroom were such that reasonable person could conclude defendants were disposing of illegal contraband). Accordingly, we will consider defendant's contentions on appeal and need not determine whether defense counsel's failure to file a posttrial motion constituted ineffective assistance.

## I. Admission of Defendant's Confession

■ Defendant asserts that his statement was involuntary and therefore should have been suppressed. The ultimate question of whether or not a confession was voluntary is reviewed *de novo*; however, a trial court's factual findings relative to the voluntariness of a confession should not be reversed unless contrary to the manifest

weight of the evidence. *In re G.O.*, 191 Ill. 2d 37, 50, 727 N.E.2d 1003, 1010 (2000).

■ In determining whether defendant's confession was voluntary, we must consider the totality of the circumstances. See *In re G.O.*, 191 Ill. 2d at 54, 727 N.E.2d at 1012. Factors to consider include the defendant's age, intelligence, background, experience, mental capacity, education, and physical condition at the time of questioning; the legality and duration of the detention; the duration of the questioning; and any physical or mental abuse by police, including the existence of threats or promises. *In re G.O.*, 191 Ill. 2d at 54, 727 N.E.2d at 1012. No single factor is dispositive. *In re G.O.*, 191 Ill. 2d at 54, 727 N.E.2d at 1012. The ultimate test of voluntariness is whether the defendant made the statement freely, voluntarily, and without compulsion or inducement of any sort, or whether the defendant's will was overcome. *In re G.O.*, 191 Ill. 2d at 54, 727 N.E.2d at 1012.

Defendant argues that his written statement should have been suppressed because of the threats to jail the women, including defendant's girlfriend, and to send Myert's cousin's baby to DCFS. He notes that Barber admitted that he told defendant that the women would be arrested and the baby turned over to DCFS unless someone admitted ownership of the contraband. In addition, the trial court found that there was in fact a DCFS threat and a threat to arrest the women. Therefore, defendant argues, the trial court erred when it found his confession to have been voluntarily made.

Defendant further argues that his statement should have been suppressed because the evidence at trial established that the police failed to scrupulously honor defendant's request to remain silent. At trial, Barber testified that defendant signed a rights waiver, provided some general background information, and then said he did not want to say any more to Barber. Thereafter, McClellan took defendant into another room and continued to interrogate him. McClellan acknowledged that Officer Barber "may have" told him that defendant did not want to talk.

■ Ordinarily, a reviewing court may consider evidence at trial to determine whether it was proper to deny a motion to suppress. *People v. Reese*, 92 Ill. App. 3d 1112, 1113-14, 416 N.E.2d 692, 693 (1981). The State, however, points to the decision of our supreme court in *People v. Brooks*, 187 Ill. 2d 91, 718 N.E.2d 88 (1999), in arguing that we should not consider the officers' trial testimony. In *Brooks*, the defendant relied on trial testimony that had not been introduced at the hearing on the motion to suppress in seeking reversal of a trial court's ruling on that motion. The Illinois Supreme Court refused to consider this testimony, opining that, when the new trial evidence was

introduced, Brooks should have asked the court to reconsider its ruling on the motion to suppress as that decision remained subject to change until final judgment. *Brooks*, 187 Ill. 2d at 128, 718 N.E.2d at 109. Having failed to do so, Brooks waived his right to argue the trial testimony on appeal. *Brooks*, 187 Ill. 2d at 128, 718 N.E.2d at 109.

The decision in *Brooks* does not support the State's position. The instant defendant, unlike the defendant in *Brooks*, did seek reconsideration of the court's ruling on the motion to suppress by renewing his objection to admission of the statement. We consequently will not ignore the trial testimony on this issue.

■ If, after warnings have been given, a defendant indicates that he wishes to discontinue questioning and asserts his right to remain silent, the questioning must cease. *Miranda*, 384 U.S. at 473-74, 16 L. Ed. 2d at 723, 86 S. Ct. at 1627. Notwithstanding, the State contends that defendant did not clearly invoke his right to remain silent. See *People v. Edwards*, 301 Ill. App. 3d 966, 704 N.E.2d 982 (1998) (demand to end interview must be specific). The State argues that defendant did not invoke his right to remain silent when he told Officer Barber that he did not want to say anything more. Instead, the State suggests, defendant was simply indicating that he did not wish to speak to Officer Barber personally. We find the State's argument unpersuasive.

■ Defendant specifically told Officer Barber that he did not want to say any more. We find that this expression was sufficiently specific to effectively and unequivocally communicate defendant's desire to assert his right to remain silent. Consequently, the police were obligated to cease further interrogation.

Alternatively, the State argues that the police did not continue interrogating defendant but, rather, that he voluntarily talked to McClellan. The State insists that, after defendant indicated his desire to remain silent, McClellan made no statement to elicit an incriminating response. McClellan's own testimony, however, is to the contrary. McClellan testified that, after defendant told Barber that he did not want to say any more, McClellan took defendant into a back bedroom and spoke with him. When asked by defense counsel what seemed to make defendant want to give a statement, McClellan answered:

> "I told him that the other individual ... Luther Hill had said the two of them were involved and gone up to Chicago, bought the drugs, came back and they were selling it, and this would be his time to help himself do what he could since Mr. Hill was saying this, maybe he was lying, that type of thing."

We find the questioning by Officer McClellan after defendant said he did not want to talk any more violated his right to remain silent.

Furthermore, this violation, coupled with the threats to jail defendant's companions and send the baby to DCFS, rendered defendant's confession involuntary. Consequently, we hold that the trial court erred in admitting defendant's confession into evidence.

The admission of an involuntary confession is unlikely to be harmless given the heavy weight typically accorded confessions by the trier of fact. *Colorado v. Connelly*, 479 U.S. 157, 182, 93 L. Ed. 2d 473, 494, 107 S. Ct. 515, 529-30 (1986) (Brennan, J., dissenting). Because the evidence was closely balanced, we find that the erroneous admission of defendant's confession was not harmless. We therefore reverse defendant's convictions and remand for a new trial.

## II. Sufficiency of the Evidence

Defendant contends that his conviction for armed violence should be reversed because the State failed to prove him guilty beyond a reasonable doubt. Generally, a decision to remand a cause for a new trial alleviates the need to address other issues; however, the constitutional guarantee prohibiting double jeopardy requires that we consider defendant's challenge to the sufficiency of the evidence. *People v. Brown*, 309 Ill. App. 3d 599, 607, 723 N.E.2d 362, 368 (1999).

For purposes of double jeopardy, all evidence submitted, including improperly admitted evidence, may be considered when determining the sufficiency of the evidence. *People v. Olivera*, 164 Ill. 2d 382, 393, 647 N.E.2d 926, 932 (1995). In reviewing the sufficiency of the evidence, the standard of review is whether any rational trier of fact could have found the essential elements of the offense to have been proven beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277 (1985).

■ A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois law. 720 ILCS 5/33A—2 (West 1994). A person is considered armed with a dangerous weapon for purposes of the armed violence statute when he carries on or about his person or is otherwise armed with a weapon. 720 ILCS 5/33A—1(a) (West 1994). Defendant concedes that his written statement was sufficient to establish that he was guilty of possession of a controlled substance, a felony defined by Illinois law.

■ Defendant contends, however, that the evidence was insufficient to support a finding that he was "otherwise armed" while committing that felony. A person is "otherwise armed" if he or she has "immediate access to or timely control over the required weapon." *People v. Harre*, 155 Ill. 2d 392, 396, 614 N.E.2d 1235, 1237 (1993). The testimony established that defendant was sleeping on the floor less than an arm's length away from the coffee table on which the gun

was located in plain view. A rational fact finder could have concluded beyond a reasonable doubt that defendant had immediate access to the gun. Consequently, we find the evidence was sufficient to support defendant's conviction for armed violence.

## III. One Act One Crime

Finally, defendant contends that the trial court erred in sentencing him for both armed violence based on possession of a controlled substance and for possession with intent to deliver a controlled substance. Although our decision to remand the cause for a new trial renders the issue moot in this appeal, we address defendant's contention because of the possibility that the issue could arise again on retrial.

The court in *People v. Garcia*, 296 Ill. App. 3d 769, 695 N.E.2d 1292 (1998), held convictions for both armed violence based on unlawful possession of a controlled substance and unlawful possession with intent to deliver a controlled substance violate one-act, one-crime principles where all of the contraband was seized from a single area and nothing suggested the defendant had segregated any of the cocaine for his personal use. Here, all of the contraband was found in a single container on the coffee table. Consequently, we find that defendant could not properly be sentenced for both armed violence and unlawful possession with intent to deliver under the facts of this case.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Kankakee County is reversed and this matter is remanded for a new trial.

Reversed and remanded.

HOLDRIDGE and LYTTON, JJ., concur.