No. 3--99--0673

_________________________________________________________________

 IN THE

 APPELLATE COURT OF ILLINOIS

 THIRD DISTRICT

 A.D., 2001

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of the 14th Judicial Circuit, 

 ) Rock Island County, Illinois,

Plaintiff-Appellant, ) 

 )

v. ) No. 98--CF--1174

 ) 

PAUL LIRA, ) Honorable

                                ) James Teros,

Defendant-Appellee. ) Judge, Presiding.

_________________________________________________________________

JUSTICE SLATER delivered the opinion of the court:

_________________________________________________________________

The defendant, Paul Lira III, submitted to an Iowa police interview accompanied by counsel.  During this first interview, the defendant confessed to an Iowa crime.  Later the same day, he was interviewed by Illinois police while under arrest in Iowa, but not accompanied by counsel.  During the second interview, the defendant confessed to an Illinois crime.  The defendant later was charged in Illinois with aggravated battery with a firearm.  720 ILCS 5/12--4.2(a)(1) (West 1998).  The defendant moved to suppress his Illinois confession.  The trial judge granted the motion based on violation of the defendant’s fifth amendment right to counsel under 
Miranda
.  On appeal, the State argues that the trial judge’s ruling was manifestly erroneous because (1) the defendant did not personally invoke his right to counsel, (2) if the defendant invoked his right to counsel, he was not in custody during the Iowa police interview, and (3) even if Iowa police knew the defendant invoked his right to counsel, such knowledge cannot be imputed to the Illinois police.  We affirm.

I. BACKGROUND

At the hearing on defendant’s motion to suppress, Detective Mike Hutton, of the Moline, Illinois, police department, testified that he received confidential information that the defendant was involved in a shooting in Moline.  As a result of this information, Hutton phoned the Davenport, Iowa, police department on December 14, 1998, and spoke with Detective Gerald McCabe.  McCabe told Hutton that he also was looking for the defendant regarding an Iowa shooting.  McCabe testified that he had no contact with the Moline police department on that day.  Moline police records, however, corroborate Hutton’s version of events.

McCabe stated that he previously had given the defendant’s photograph to the news media with the information that the Davenport police were looking for the defendant.  The defendant testified that he received a phone call from a friend on December 15, 1998, saying that the police were looking for him.

Following this conversation, the defendant called attorney David Treimer, who previously represented the defendant.  The defendant told Treimer that he heard Iowa police were looking for him and asked Treimer to determine whether this was true.  Treimer called the Davenport police department to ask if a warrant was outstanding for the defendant’s arrest and he spoke with McCabe.  Treimer could not recall whether he learned if a warrant had issued for the defendant’s arrest.  McCabe told Treimer that the defendant could come to the police station or otherwise be arrested.  Treimer told McCabe of his contact with the defendant and that he was willing to surrender the defendant to McCabe that day.

Treimer then phoned the defendant asking him to come to Treimer’s office.  After the defendant arrived, he agreed to surrender to and be interrogated by the Davenport police.  The defendant testified that he told Treimer he was not involved with the Davenport shooting.  Treimer testified that he explained to the defendant his right to remain silent and his right to have counsel present during interrogation.  The defendant testified that he told Treimer that he would go to the police station to be interviewed only if accompanied by counsel.  Treimer and the defendant then went to the Davenport police station at about noon.

McCabe testified that even if the defendant made no statements, he would have been under arrest.  According to  McCabe, the defendant was actually under arrest as soon as he arrived at the police station. 

After McCabe arrived at the police station, Treimer, the defendant, and McCabe entered an interrogation room where McCabe showed Treimer and the defendant a waiver of rights form.  Treimer testified that he briefly may have discussed the defendant’s rights with him again.  The defendant signed the form and McCabe began the interrogation.  McCabe testified that the interview was taped.

Treimer indicated to McCabe that he was representing or had represented the defendant in the past.  Treimer told McCabe that the defendant needed an attorney and that Treimer was present for the limited purpose of the interview.  Counsel stated that the defendant would speak to McCabe in the presence of counsel.  The defendant testified that he did not tell McCabe that he would only speak with the officer in the presence of counsel because McCabe never asked him a question about the subject.

During the interview, the defendant admitted to purchasing a gun and delivering it to a residence near the location of the shooting.  Because this statement indicated to Treimer that the defendant might have confessed to a violation of Iowa law, the interrogation was terminated by Treimer.  He testified that the defendant did not at any time ask to terminate the interview.

Treimer stated that next he probably told McCabe he would be representing the defendant through court appointment, and if not, the defendant would have another attorney appointed.  Counsel and McCabe agreed that the interview was concluded.  Counsel discussed the defendant’s statement with McCabe outside the interrogation room.

McCabe told Treimer that he had no further questions for the defendant.  The officer did not reenter the interrogation room with the defendant.  The interview lasted approximately 45 minutes.

Treimer returned to the interview room where the defendant asked Treimer if he would be allowed to go home or if he was going to be arrested.  Treimer told the defendant he was certain the defendant would be incarcerated.  He advised the defendant not to speak with anyone.  The defendant indicated that he did not wish to speak to the police.  Treimer told the defendant to allow himself to be arrested and to let Treimer do his job.  The defendant was formally arrested following termination of the interview.

McCabe testified that, after the interrogation, he received a phone call from a confidential source saying that the defendant might be wanted for a shooting in Moline, Illinois.  McCabe called the Moline police following the interview and advised Lieutenant Brockway that the defendant was in custody in Davenport and that the defendant could be questioned by Moline authorities.  Brockway communicated this information to Hutton.  Hutton then traveled to Davenport to interview the defendant, arriving at the Davenport police station around 4 p.m.

McCabe testified that he was not present in the Davenport police station after 4 p.m. that day.  He stated that he did not communicate to anyone in the Davenport police department that the defendant was represented by counsel on the Iowa offense or that counsel was present during the interview concerning the Iowa matter.  McCabe said that he did not inform anyone at the Moline police department that the defendant was under arrest.  He testified that he told someone from Moline that the defendant was in an interview room in Davenport.

Upon his arrival, Hutton told someone at the Davenport police front desk that he wished to speak with the defendant.  He was directed to a detective who told him that the defendant was in an interview room.  Hutton testified that no one at the Davenport police department informed him that defendant was represented by counsel.  He admitted, however, that he considered the possibility that the defendant had invoked his right to counsel during the Iowa interview.

Hutton began his interview with the defendant at about 

4:25 p.m.  He read the defendant his 
Miranda
 rights and the defendant again signed a written waiver of rights form.  Hutton informed the defendant that he wished to speak with the defendant about a shooting in Moline, Illinois.  The defendant gave Hutton a seven-page statement about the Moline shooting including self-incriminating statements.  During this interview, the defendant did not tell Hutton that he was represented by counsel, that he wished to have counsel present, or that he wished to terminate the interview.

On December 28, 1998, the defendant was charged with aggravated battery with a firearm.  720 ILCS 5/12--4.2(a)(1) (West 1998).  On July 12, 1999, the defendant filed a motion to suppress his confession to Hutton.  The trial judge held a hearing on the motion to suppress and granted the defendant’s motion.  The State moved to reconsider this ruling.  The motion to reconsider was denied and the State appealed.

II. STANDARD OF REVIEW

On appeal, when a trial court’s ruling concerns the voluntariness of a defendant’s statements, the reviewing court will afford great deference to the trial court’s finding of facts and will reverse those findings only if they are against the manifest weight of the evidence.  The reviewing court, however, will review 
de
 
novo
 the ultimate legal question of whether the confession was voluntary.  
In re G.O.
, 191 Ill. 2d 37, 727 N.E.2d 1003 (2000).

III. ANALYSIS

The fifth and fourteenth amendments to the Constitution of the United States guarantee the right not to be compelled to testify against oneself.  U.S. Const., amend. V, XIV.  In 
Miranda v. Arizona
, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966)
, the United States Supreme Court held that custodial interrogation is inherently coercive and violates a defendant’s privilege against self-incrimination unless the defendant is warned of certain rights.  Under 
Miranda
, a criminal defendant must be advised of his or her right to have counsel present in order to counter the inherently coercive atmosphere of custodial interrogation.

In cases that followed 
Miranda
, the Court further clarified this rule.  In 
Edwards v. Arizona
, 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880 (1981), the Court stated that once a suspect asserts the right to counsel during questioning, not only must the current interrogation cease, but also the defendant may not be approached for further interrogation until counsel has been made available.  If police subsequently initiate questioning in the absence of counsel, the defendant’s statements are presumed involuntary and are inadmissible at trial.

Unlike the sixth amendment right to counsel in preparation for trial, the 
Miranda
 fifth amendment right to counsel is not offense specific.  Once a defendant invokes this right to counsel for one offense, the defendant may not be approached regarding any offense unless counsel is present.  
Arizona v. Roberson
, 486 U.S. 675, 100 L. Ed. 2d 704, 108 S. Ct. 2093 (1988).

A defendant’s 
Miranda
 right to counsel is not satisfied by a one-time consultation with his or her lawyer.  If the defendant expresses the desire to deal with police only through counsel, the defendant is only to be interrogated by police with defense counsel present.  
Minnick v. Mississippi
, 498 U.S. 146, 112 L. Ed. 2d 489, 111 S. Ct. 486 (1990).

A. Whether the Defendant Personally 

Invoked His Right to Counsel.

Under 
Miranda
, a defendant invokes his fifth amendment right to presence of counsel when he "indicates in 
any
 manner and at any stage of the process [of custodial interrogation] that he wishes to consult with an attorney before speaking."  (Emphasis added.)  
Miranda
, 384 U.S. at 444-45, 16 L. Ed. 2d at 707, 86 S. Ct. at 1612.

The State argues that the defendant never personally invoked his 
Miranda
 fifth amendment right to the presence of counsel during interrogation.  Further, the State contends that the defendant only communicated this wish
 to his counsel and that his attorney could not invoke his right to counsel for him.

The State cites cases in which others attempted to invoke a defendant’s right to counsel for the defendant.  See, 
e.g.
, 
People v. Benoit
, 240 Ill. App. 3d 185, 608 N.E.2d 250 (1992); 
People v. Watson
, 233 Ill. App. 3d 143, 583 N.E.2d 1180 (1991); 
People v. Thompkins
, 121 Ill. 2d 401, 521 N.E.2d 38 (1988).  The defendant, however, points to 
People v. Olivera
, 246 Ill. App. 3d 921, 617 N.E.2d 98 (1993), in which the defendant invoked his right to the presence of counsel by surrendering to police accompanied by his attorney.

We find the cases cited by the State to be inapposite in that in the instant case, others did not indicate for the defendant his desire to be represented by counsel.  Rather, the defendant clearly and personally indicated his desire to be represented by counsel by submitting to police interrogation while accompanied by his attorney.  Like the defendant in 
Olivera
, the defendant in the instant case invoked his right to counsel by coming to the police station accompanied by his attorney.  Therefore, we find that it was not against the manifest weight of the evidence for the trial court to find that the defendant personally invoked his 
Miranda
 fifth amendment right to presence of counsel.

B. If Defendant Invoked His Right to Counsel,

Whether Defendant’s Iowa Interview Was Custodial.

Factors to be considered by the trier of fact in determining whether an interrogation was custodial include the location, time, length, and mood of the interrogation; the number of interrogators; any indication of formal arrest; whether the defendant voluntarily assisted in the investigation; whether the defendant was allowed to walk about the location unaccompanied during questioning; and the age, intelligence, and mental makeup of the defendant. 
 Whether the defendant was in custody during interrogation is a question of fact for the trial judge.  
People v. Anderson
, 225 Ill. App. 3d 636, 587 N.E.2d 1050 (1992).  The question of custody depends on the objective circumstances of the interrogation, not the subjective views of the police or the defendant.  
Stansbury v. California
, 511 U.S. 318, 128 L. Ed. 2d 293, 114 S. Ct. 1526 (1994); 
People v. Goyer
, 265 Ill. App. 3d 160, 638 N.E.2d 390 (1994).

In determining that the defendant was subjected to custodial interrogation in Iowa, the trial judge reasonably could have considered such factors as that the interview was at the police station, that the interview lasted for 45 minutes, and that the mood of the interview was that of a serious interrogation concerning a shooting incident.  The trial judge reasonably could have relied on McCabe’s testimony in finding that the defendant objectively was in custody once he arrived at the police station.  Thus, it was not manifest error for the trial judge to find that the defendant was in custody during the Iowa interview.

C. Whether Even if Iowa Police Knew the Defendant

Invoked His Right to Counsel, Such Knowledge 

Cannot be Imputed to Illinois Police.

The State submits that, in response to its motion to reconsider, it was manifest error for the trial judge to rule that knowledge by Iowa police that the defendant invoked his right to counsel can be imputed to Illinois police.  The State argues that the trial court’s ruling is in conflict with the Illinois Supreme Court’s holding in 
People v. Young
, 153 Ill. 2d 383, 607 N.E.2d 123 (1992).

In 
Young
, the defendant was arrested by Wisconsin police at the request of Illinois police pursuant to a fugitive warrant.  During an extradition hearing, the defense attorney asserted the defendant’s fifth amendment right to counsel for the present and the future.  The defendant also articulated this right.  At the defense attorney’s request, the Wisconsin court agreed to enter an order that Illinois authorities refrain from questioning the defendant without counsel present.  The judge noted that such an order might not be valid.  The record did not reflect whether such an order was entered by the Wisconsin court.

In any event, no Wisconsin court order was 
never
 presented to the Illinois police who transported the defendant back to Illinois.  In response to police interrogation, the defendant gave self-incriminating statements
 during transport.  The trial court granted the defendant’s motion to suppress, but the appellate court reversed.  The Illinois Supreme Court affirmed the appellate court’s decision, stating that "knowledge [of the defendant’s invocation of the right to counsel] should not be imputed interstate under the circumstances present."  
Young
, 153 Ill. 2d at 394, 607 N.E.2d at 128.

As the defendant points out, the 
Young
 court did not establish a bright line prohibition against interstate imputation of knowledge of a defendant’s 
Miranda
 fifth amendment right to counsel under all circumstances.  The 
Young
 court made clear that its ruling was narrowly tailored to the circumstances present in the case before it.

We find the facts of the instant case to be distinguishable from those present in 
Young
.  In 
Young
, the defendant invoked his 
Miranda
 right to counsel in court, was returned to Wisconsin police custody awaiting extradition, and a few days later made self-incriminating statements while being transported to Illinois by Illinois police.  In the instant case, the defendant was in continuous custody in the Iowa police station where he invoked his 
Miranda
 right to counsel during custodial police interrogation.  During his continuous police custody in Iowa, the defendant was interrogated first by Iowa police, and then by Illinois police, all on the same afternoon within a matter of a few hours.

In 
Young
, the record did not reflect whether the Wisconsin court issued an order pursuant to the defense request at the extradition hearing.  In any event, no taped or written record of the defendant’s invocation of his 
Miranda
 right to counsel was made available to the Illinois police by the Wisconsin police.  In the case at bar, Officer McCabe taped the Iowa interview with the defendant.  Thus, a record of the defendant’s tape-recorded invocation of his 
Miranda
 right to presence of counsel was available for the Illinois police to review at the Iowa police station.

In 
Young
, the defendant was in Wisconsin custody awaiting extradition to Illinois.  Unlike the circumstances of the case at bar, the Illinois police had no reason to believe that the defendant had been subjected to police custodial interrogation while in Wisconsin.  The Illinois police had no reason to expect that the defendant might have requested presence of counsel during a Wisconsin extradition hearing.

In the instant case, however, the Illinois police officer was aware that the defendant was being held in Iowa police custody for an Iowa offense.  The Illinois police officer in the present case, therefore, had reason to expect that the defendant might have invoked his right to presence of counsel during Iowa police interrogation.  Officer Hutton testified that he considered the possibility that the defendant had invoked his 
Miranda
 right to counsel during the Iowa interview.

Because 
Young
 is factually distinguishable from the case at bar, we find 
Young
 to be inapposite in this case.  We find the United States Supreme Court’s rulings in 
Roberson
 and 
Minnick
 to be controlling. 
 We hold that under 
Roberson
 and 
Minnick
, once the defendant invoked his fifth amendment right to counsel during custodial interrogation, all questioning by police from either jurisdiction should have ceased unless the defendant initiated further questioning.  
Roberson
, 486 U.S. 675, 100 L. Ed. 2d 704, 108 S. Ct. 2093; 
Minnick
, 498 U.S. 146, 112 L. Ed. 2d 489, 111 S. Ct. 486.
(footnote: 1) 

In 
Roberson
, the Court stated that custodial interrogation "must be conducted pursuant to established procedures, and those procedures in turn must enable an officer who proposes to initiate an interrogation to determine whether the suspect has previously requested counsel."  
Roberson
, 486 U.S. at 687, 100 L. Ed. 2d at 717, 108 S. Ct. at 2101.  The Court further stated that "whether the same or different law enforcement authorities are involved in the second investigation, the same need to determine whether the suspect has requested counsel exists."  
Roberson
, 486 U.S. at 687-88, 100 L. Ed. 2d at 717, 108 S. Ct. at 2101.  Under 
Roberson
, a defendant’s 
Miranda
 right to counsel is not offense specific.  
Roberson
, 486 U.S. 675, 100 L. Ed. 2d 704, 108 S. Ct. 2093.

In 
Minnick
, the defendant was wanted for murder in Mississippi and was arrested in California.  During an FBI interview in California in which the defendant made self-incriminating statements, the defendant asserted the right to the presence of counsel.  Following the FBI interview, the defendant met with an appointed lawyer two or three times.

Three days after the FBI interview, the defendant was interviewed in California by a Mississippi deputy sheriff.  During this interview, the defendant again incriminated himself.

The Court held that both self-incriminating statements should be suppressed.  The Court ruled that pursuant to 
Edwards
, "when counsel is requested, interrogation must cease, and officials may not reinitiate interrogation without counsel present, whether or not the accused has consulted with his attorney."  
Minnick
, 498 U.S. at 153, 112 L. Ed. 2d at 498, 111 S. Ct. at 491.

Under 
Roberson
, the Illinois police in this case should have followed procedures to determine if the defendant had previously requested counsel.  According to 
Roberson
, such a procedure should be followed even if the Illinois police were different law enforcement authorities initiating a second investigation.

As in 
Minnick
, we find that the defendant in the instant case clearly invoked his right to counsel during custodial interrogation by law enforcement officials from one jurisdiction.  Once the defendant invoked the right to counsel, interrogation by police from any jurisdiction must cease while the defendant remains in custody.  Officials may not reinitiate interrogation under such circumstances without the defendant’s counsel present.  In this case, the second interview was initiated by Illinois police and not by the defendant after he invoked his right to counsel.  Therefore, we hold that it was not manifest error for the trial court to rule that the Illinois police violated the defendant’s fifth amendment right to the presence of counsel under 
Miranda
, 
Edwards
, 
Roberson
, and 
Minnick
.

IV. CONCLUSION

For the foregoing reasons, we affirm the ruling of the trial court.

Affirmed.

HOLDRIDGE, J.J., and HOMER, P.J., concur.

FOOTNOTES
1: The court in 
Young
 did not discuss 
Minnick
 even though 
Young
 was decided in 1992 and 
Minnick
 had been decided in 1990.