THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HABERTO MENDEZ, Defendant-Appellant.

First District (3rd Division)   No. 1—00—2178

Opinion filed May 2, 2001.

Patrick A. Tuite and Beth L. Hansher, both of Arnstein & Lehr, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Margaret J. Campos, and Susan M. Caraher, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WOLFSON delivered the opinion of the court:

On May 12, 1995, Haberto Mendez sat through a hearing on his motions to suppress 998.9 grams of cocaine and an oral statement about the cocaine. The next day he watched as his jury was selected and the first day of trial testimony was completed. Then he left for parts unknown. The trial went on without him. The jury convicted Mendez of possession of a controlled substance with intent to deliver and the trial judge sentenced him *in absentia* to 20 years in prison. Four years later, in October of 1999, the defendant was arrested and brought before the trial judge. Another sentencing hearing was held. The sentence was reduced to 18 years.

On appeal, defendant contends: (1) the trial court erred in denying his motion to suppress the physical evidence; (2) the trial court erred in denying the motion to suppress his oral statement; and (3) the trial court abused its discretion by proceeding when defendant did not appear on the second day of trial.

We affirm.

FACTS

On April 1, 1995, defendant was driving a car in Chicago when he was stopped by two police officers for failing to use a turn signal before turning at an intersection. According to the arresting officers, defendant could not produce a valid driver's license. When the officers searched the car, they found what they suspected to be a brick of cocaine. Defendant and his passenger were arrested. During a subsequent search of the car, the officers found two pagers and a cell phone.

While he was at the police station, defendant gave a short oral statement to an assistant State's Attorney. Defendant's attorney filed a pretrial motion to suppress both the physical evidence obtained from the search of the car and defendant's oral statement.

At the hearing on the motions to suppress, Chicago police sergeant Ricardo Pavon testified that on April 1, 1995, at around 10 p.m., he was in an unmarked car with police officer Kenneth Stoppa. Officer Stoppa was driving. The officers' vehicle was directly behind defendant's, without any cars between them. Sergeant Pavon testified

the officers stopped defendant after he failed to use a turn signal when he made a right turn at an intersection.

Sergeant Pavon identified defendant as the driver of the vehicle they pulled over. He approached the passenger's side of the car while Officer Stoppa approached the driver's side. When he approached the passenger's side, he shined his flashlight into the car. When he did, he saw a large white object that "looked like a white brick" on the floor of the car, close to the passenger's seat. The officer testified his experience as a police officer led him to believe the object might be cocaine.

Sergeant Pavon testified he asked the passenger to step to the rear of the car. Defendant had already been asked to exit the car by Officer Stoppa. Sergeant Pavon went back to the passenger side of the car and retrieved the object he saw on the floor. Both men were placed under arrest and were advised of their rights.

Sergeant Pavon was not asked whether defendant affirmatively invoked his right to silence or if he attempted to question defendant after reading him his rights. The officer simply testified defendant said nothing after he read him his rights:

"Q. Did he say anything else to you?

A. After I read him his rights, no."

The men were taken to the police station where they were interviewed by an assistant State's Attorney. Sergeant Pavon remembered being present for one of the interviews because he had to act as an interpreter for the man in custody, who spoke only Spanish. The officer could not remember whether the interview was with defendant or the passenger of the car.

Officer Stoppa testified he was driving an unmarked squad car at around 10 p.m. on April 1, 1995. His partner that day was Sergeant Pavon. Officer Stoppa said he had been driving behind a car for less than a minute when the driver of the vehicle made a right turn without signaling.

Officer Stoppa turned on his lights and signal and stopped the car. The officer testified defendant was the driver of the car. As Officer Stoppa approached the car, he saw defendant hand a "white brick" to the passenger of the car.

Officer Stoppa asked defendant for his driver's license. Defendant said he did not have a license. At that point, Officer Stoppa asked defendant to get out of the car. Officer Stoppa said he searched defendant after he got out, then asked him to step to the rear of the car. Sergeant Pavon asked the passenger to step to the rear of the car, too, and then went back to the passenger's side and retrieved an object. Sergeant Pavon placed both men under arrest and advised them of their rights. Officer Stoppa said he issued two tickets to defendant, for

failure to use a turn signal and no driver's license. Officer Stoppa testified defendant appeared to speak and understand English without difficulty. Again, Officer Stoppa was not asked whether defendant affirmatively invoked his right to silence:

"Q. And, officer, after he read them the Miranda rights from a pre-printed card, did Mr. Mendez make any statement?

A. He had nothing to say.

Q. Did he say anything that you can recollect?

A. No."

Assistant State's Attorney Maureen McGee testified she spoke to defendant at the police station at around midnight on April 2, 1995. Chicago police officer Pritt was present. McGee said she began her conversation with defendant by asking him if he spoke English. When defendant said he did, McGee told him she was an attorney but was not his attorney. He said he understood. McGee then advised him of his rights. Defendant indicated he understood each of his rights but still wanted to speak with McGee.

McGee also remembered having interviewed the passenger in defendant's car. She said Sergeant Pavon translated during that interview because the man did not speak English.

Defendant testified that on April 1, 1995, he was driving his sister's car when the police pulled him over after he made a right turn. Defendant said he signaled before turning. He said he never was asked for his driver's license. Defendant said Sergeant Pavon walked up to his side of the car and told him to get out of the car and place his hands on the trunk.

The trial court denied defendant's motion to suppress the physical evidence and his motion to suppress his oral statement.

Officer Stoppa testified again at defendant's jury trial. His trial testimony concerning the manner in which defendant was arrested and the car searched was substantially the same as his testimony at the hearing on the motions to suppress.

Francis Kent Manieson, a forensic scientist for the Chicago crime lab, testified he performed several tests on the white substance in the clear plastic package found in defendant's car. Manieson testified these tests revealed the bag contained 998.9 grams of cocaine.

Assistant State's Attorney McGee also testified at the trial. McGee again said defendant agreed to speak with her after she advised him of his rights. During that interview, defendant told McGee "some guy told him to drop the [package] off." Defendant told McGee he didn't know whose car he was in and said the passenger was his friend. At that point, defendant told McGee he didn't want to speak to her any more and McGee left the room. McGee testified defendant did not appear to have any trouble understanding her during their conversation.

McGee was the last witness to testify on the first day of trial. After she finished, the trial judge asked the jurors to be back at 9:15 the following morning. Before he left the bench, the judge told the parties he would "[s]ee everybody around 9:00, 9:15 tomorrow morning."

The case was called at 10 the next morning. Defendant had not appeared:

"THE COURT: What we will indicate is that when we broke, it might have been a little bit after 5 o'clock, [defendant] was here in open court. The case was continued to today's date and we had indicated to the ladies and gentlemen of the jury to be here at 9:15. It is now approximately 7 minutes after 10. Mr. Mendez is not present, his attorney Mr. Levin is here in open court. He's not heard from his client, is that correct?

[DEFENSE COUNSEL]: Yes, Judge. I don't know where [defendant] is. I called the only telephone number that I had for him, there was no answer. I called my office [at] approximately *** 9:30 and my secretary had not heard from him. I don't know the reason for his failure to appear. I would be asking the Court to put the matter over to allow me to determine where he is and to allow me to ask for the valid reason for his failure to appear."

The trial court asked defense counsel for defendant's address, then noted the defendant lived less than three miles from the courthouse. The trial court said:

"It is the Court's view that at this time [defendant] has willfully failed to appear. This trial is in progress. The jurors have been here since 9:15. We will proceed and if [defendant] appears, fine. If [defendant] does not appear, that's fine too."

After defense counsel objected, the trial court said:

"The Court is of the opinion and [feels] the evidence is clear *** that when somebody is present at 5:15 in the evening and they are present when the case is continued to 9:15 the following morning, they live less than 3 miles from this location, there is no indication that that individual has suffered any illness or foul play *** [r]espectfully [the court] feels he's willfully failing to appear and we will proceed."

The trial proceeded with Sergeant Pavon as the next witness. Sergeant Pavon's testimony concerning defendant's arrest and the search of the car was substantially the same as the testimony he gave at the hearing on the motions to suppress. The only difference in his trial testimony concerned defendant's invocation of his right to remain silent. During cross-examination, Sergeant Pavon testified he asked defendant "[D]o you wish to answer any questions at this time," after he read defendant his rights. Defendant answered "no."

After Sergeant Pavon testified, the prosecutor said:

"Judge, at this time we renew our motion to call the investigator that's been doing the custody and hospital check with respect to the defendant."

The trial court said it would not be necessary to have the investigator testify.

The jury returned a verdict of guilty on the charge of possession of a controlled substance with intent to deliver. Defendant failed to appear at the sentencing hearing. The trial court denied defendant's motion for a new trial and sentenced defendant to 20 years in prison.

Defendant was apprehended in 1999 and filed a second motion for a new trial, arguing the trial court erred in proceeding without defendant present. At the hearing on the motion, defendant's wife testified he was sick on the second day of the trial. She said she tried to call his attorney several times. Defendant's trial attorney testified he never received any message that defendant tried to contact him that day.

The trial court found defendant's explanation for his failure to appear "lacking in credibility" and denied the motion, but agreed to allow defendant to participate in another sentencing hearing. After reviewing all the evidence in aggravation and mitigation, the trial court reduced defendant's sentence to 18 years in prison.

DECISION

Motion to Suppress Physical Evidence

Defendant contends the trial court erred in denying his motion to suppress physical evidence. Defendant claims the officers did not have sufficient probable cause to search the car after stopping it.

■ The defendant does not challenge the trial court's findings of fact. When neither the trial court's findings of fact nor its determination of witness credibility is questioned, a ruling on a motion to suppress is reviewed *de novo*. *Village of Plainfield v. Anderson*, 304 Ill. App. 3d 338, 341, 709 N.E.2d 976 (1999).

■ Section 6—112 of the Illinois Vehicle Code (Code) requires drivers to exhibit their licenses to police officers on demand:

"Every licensee or permittee shall have his drivers license or permit in his immediate possession at all times when operating a motor vehicle and, for the purpose of indicating compliance with this requirement, shall display such license or permit if it is in his possession upon demand made ***.

For the purposes of this section, 'display' means the manual surrender of his license certificate into the hands of the demanding officer for his inspection thereof." 625 ILCS 5/6—112 (West 1998).

■ A police officer may arrest a driver who fails to comply with

this section of the Code. *People v. Ramirez*, 248 Ill. App. 3d 938, 943, 618 N.E.2d 638 (1993). Where an officer has probable cause to arrest, a search incident to the arrest requires no additional justification. *People v. Rossi*, 102 Ill. App. 3d 1069, 430 N.E.2d 233 (1981); see also *People v. Perry*, 204 Ill. App. 3d 782, 787, 562 N.E.2d 618 (1990) (search of driver's purse after she was arrested for failing to produce a valid driver's license following a traffic stop found appropriate). The officers' search of defendant's car was proper. See *Rossi*, 102 Ill. App. 3d at 1073 (search may be made immediately prior to actual arrest).

Though defendant concedes police officers may arrest a driver who cannot produce a valid driver's license, he notes they could have simply written him a ticket. Defendant does not cite any authority to support this argument, and we do not find it convincing. It makes no sense to say that a police officer was not justified in carrying out a search incident to a lawful arrest simply because he had the option of writing the defendant a ticket rather than arresting him.

■ We also find Sergeant Pavon's testimony, accepted as credible by the trial judge, shows the cocaine was in plain view when he approached the passenger's side of the car. According to the plain view doctrine, a seizure is authorized where: (1) the police view the object from a place where they are legally entitled to be; and (2) it is immediately apparent to the police that the items may be evidence of a crime, contraband, or otherwise subject to seizure. *People v. Watkins*, 293 Ill. App. 3d 496, 502, 688 N.E.2d 798 (1997).

■ Sergeant Pavon was legally entitled to approach the passenger's side of the car as part of the routine traffic stop. At trial and at the hearing on the motion to suppress, Sergeant Pavon testified, based on his experience as a police officer, he believed the large white "brick" he saw on the floor of the car was cocaine.

Defendant claims the package of cocaine "lacked any distinguishing characteristics" to reasonably lead Sergeant Pavon to believe it contained contraband. The two cases defendant relies on, *People v. Penny*, 188 Ill. App. 3d 499, 544 N.E.2d 1015 (1989), and *People v. Evans*, 259 Ill. App. 3d 650, 631 N.E.2d 872 (1994), are factually different from this one.

In *Penny*, the defendant was stopped when police officers noticed his car had an expired license plate sticker. While one of the police officers talked to the defendant, the other officer walked to the car and looked inside. He saw "a package, approximately seven inches in diameter and four inches thick, wrapped in a brown opaque plastic material on the floor." *Penny*, 188 Ill. App. 3d at 500. The officer asked the defendant what was in the package. The defendant told him he did not know what the package contained and said he borrowed the car.

The officer opened the car, took out the package, and poked a hole in it. He found it contained white powder. The powder later proved to be cocaine. The trial court granted defendant's motion to suppress, finding the suspicions of the officer were not enough to constitute probable cause. We affirmed the trial court's decision, and said:

> "[T]he package observed by the officer in the present case was an innocuous rectangular package, wrapped in brown plastic. As stated by the trial court, there was nothing about the package which made it immediately apparent that it contained narcotics. The package could have contained numerous legitimate items." *Penny*, 188 Ill. App. 3d at 504.

In *Penny*, the contraband was wrapped in an opaque plastic, so that the officer could not see the contents of the package. Here, the cocaine was wrapped in clear plastic. Sergeant Pavon described it as a "large white brick." The packaging here did not obscure the contents as it did in *Penny*. It was more readily identifiable than the "innocuous rectangular package, wrapped in brown plastic" described in *Penny*. *Penny*, 188 Ill. App. 3d at 504.

In *Evans*, the defendant was stopped for speeding. When the officer approached the driver's side window to hand the defendant a ticket, he noticed a wooden box inside the defendant's shirt pocket. The officer asked the defendant to hand him the box. When he opened it, the officer found marijuana. We found the trial court erred in denying defendant's motion to suppress and said:

> "The container was not one of those rare 'single-purpose' containers which by their very nature cannot support a reasonable expectation of privacy because their contents can be inferred from their outward appearance and the containers can reasonably have no legitimate purpose other than the concealment of contraband." *Evans*, 259 Ill. App. 3d at 655.

In *Evans*, as in *Penny*, the contraband was concealed by its packaging. In this case, the cocaine was not "concealed" inside a box or opaque plastic wrapping. It was in a clear, plastic bag that allowed Sergeant Pavon to see the "white brick" of cocaine inside.

We find the search was carried out pursuant to a lawful arrest. We also find the seizure of the cocaine was proper under the plain view doctrine. We affirm the trial court's denial of defendant's motion to suppress the physical evidence.

## Motion to Suppress Oral Statement

Defendant contends the trial court erred in failing to suppress the oral statement he made to Assistant State's Attorney (ASA) McGee at the police station. Defendant claims he invoked his right to remain

silent at the scene of the arrest. Defendant contends McGee violated his right to remain silent when she initiated a second interview at the police station. The State contends defendant waived his right to remain silent and voluntarily spoke with McGee after she advised him of his rights a second time.

Because neither the facts nor the credibility of witnesses is at issue, we review the motion to suppress *de novo. People v. Nielson,* 187 Ill. 2d 271, 286, 718 N.E.2d 131 (1999).

At the hearing on the motion to suppress, neither Officer Stoppa nor Sergeant Pavon testified defendant affirmatively invoked his right to remain silent. At that hearing, both officers simply said defendant "had nothing to say" after Sergeant Pavon read him his rights. They were not asked if they attempted to question defendant. From this testimony, it would appear defendant was questioned for the first time by ASA McGee at the police station.

Defendant primarily relies on Sergeant Pavon's trial testimony in arguing his statement to ASA McGee should have been suppressed. During cross-examination, Sergeant Pavon testified:

"Q. Officer, did you say anything else to Mr. Mendez at that time?

A. Yes. I said do you wish to answer any questions at this time.

Q. What did Mr. Mendez say?

A. He said no."

■ Counsel renewed his motion to suppress at trial, using Sergeant Pavon's trial testimony as the basis for the renewed objection to the admission of defendant's statement to ASA McGee. When counsel renews the motion to suppress at trial, a reviewing court may consider the testimony and evidence presented at the pretrial suppression hearing and the testimony and evidence presented at trial. *People v. Strong,* 316 Ill. App. 3d 807, 813, 737 N.E.2d 687 (2000); *People v. Brooks,* 187 Ill. 2d 91, 128, 718 N.E.2d 88 (1999).

But that is not the end of the inquiry.

■ Statements obtained after the defendant invokes his right to remain silent may be admissible if the defendant's right to end questioning was "scrupulously honored."[1] *Nielson,* 187 Ill. 2d at 287.

---

[1]The United States Supreme Court has distinguished the right to remain silent from the right to counsel. *Edwards v. Arizona,* 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880 (1981). Once an individual invokes his right to counsel under the fifth amendment, the police may not reinterrogate an accused until counsel has been made available. *Edwards,* 451 U.S. at 484-85, 68 L. Ed. 2d at 386, 101 S. Ct. at 1885. This distinction is based on language in *Miranda,* which the Supreme Court says provides "additional safeguards" when the ac-

In determining whether a defendant's right was "scrupulously honored," we consider whether:

> "(1) the police immediately halted the initial interrogation after the defendant invoked his right to remain silent; (2) a significant amount of time elapsed between the interrogations; (3) a fresh set of *Miranda* warnings were given prior to the second interrogation; and (4) the second interrogation addressed a crime that was not the subject of the first interrogation." *Nielson*, 187 Ill. 2d at 287.

Here, Sergeant Pavon testified at trial defendant told him he did not wish to answer any questions—an exercise of his right to remain silent. Sergeant Pavon did not continue to interrogate him. Two hours later, ASA McGee introduced herself to defendant, told him she was an attorney but was not his attorney, and again advised him of his rights. McGee testified defendant said he still wanted to talk to her, though he understood he had a right to remain silent. McGee asked him a series of questions related to his arrest and the cocaine found in his car.

Defendant contends the two hours that elapsed was not a "significant amount of time." Defendant also contends his statement should have been suppressed because McGee's questions addressed the same crime that was the subject of the first interrogation.

In *Nielson*, the defendant was arrested for theft and firearms offenses. The defendant initially agreed to speak with two police officers at around 1 p.m. the day he was arrested. When the officers began to question him about the murder of his ex-wife and daughter, the defendant became uncooperative and cut the interview short. After confessing to another police officer, defendant asked to speak to one of the officers he spoke to during the first interview. The second interview began at 3:25 p.m., a little over two hours after the first. Defendant was advised of his rights again. He signed a waiver form and agreed to speak with the police officer. He then gave the statement that was admitted into evidence at trial.

On appeal before the Illinois Supreme Court, defendant argued the trial court erred in denying his motion to suppress because the police officers violated his right to remain silent by interviewing him so soon after the first, truncated interview. The Supreme Court found that the 2-hour-and-25-minute lapse between the two statements con-

---

cused asks for counsel. *Edwards*, 451 U.S. at 485, 68 L. Ed. 2d at 386, 101 S. Ct. at 1885. The distinction is followed in Illinois. See *People v. Lira*, 318 Ill. App. 3d 118, 123, 742 N.E.2d 885 (2001) (once an accused invokes his right to counsel, current interrogation must cease and the police may not reinitiate interrogation without counsel present). In this case, defendant did not invoke his right to counsel.

stituted a "significant amount of time." *Nielson*, 187 Ill. 2d at 290. It went on to find that though the second interrogation addressed the same crime as the first interrogation, "this alone does not preclude a finding that the defendant's right to remain silent was scrupulously honored." *Nielson*, 187 Ill. 2d at 290; see also *People v. Foster*, 119 Ill. 2d 69, 86-87, 518 N.E.2d 82 (1987) (requestioning the defendant about the same crime "does not of itself mean that his rights under *Miranda* were violated").

█ The facts surrounding the two interviews in this case closely resemble the facts in *Nielson*. In *Nielson*, as in this case, the only issues were whether the time lapse was sufficient and whether the fact that both interviews concerned the same crime required suppression of the statement. We would be hard-pressed to find the supreme court would have ruled differently in this case simply because the second interview took place 20 minutes sooner than it did in *Nielson*.

Though defendant attempts to distinguish this case from *Nielson* by noting the defendant in *Nielson* volunteered a confession to a deputy while in the jail's exercise yard, that confession was not the statement entered into evidence at trial. The statement at issue was the one taken during the second interview of defendant at 3:25 p.m. Pursuant to *Nielson*, we find defendant's right to remain silent was "scrupulously honored" and affirm the trial court's denial of defendant's motion to suppress his oral statement.

Trial Court's Decision to Proceed in Defendant's Absence

Defendant contends the trial court erred in ordering the parties to proceed with the trial in his absence. Defendant claims the State was required to prove through "substantial evidence" that defendant's failure to appear at trial was willful.

█ While a defendant has a constitutional right to be present at all stages of trial, a defendant waives the right to be present when he voluntarily absents himself from trial. *People v. Smith*, 188 Ill. 2d 335, 341, 721 N.E.2d 553 (1999). "A trial court's decision to proceed with a trial *in absentia* will not be reversed unless the trial court abused its discretion." *Smith*, 188 Ill. 2d at 341.

█ Section 115—4.1(a) of the Code of Criminal Procedure of 1963 says:

> "(a) When a defendant after arrest and an initial court appearance for a non-capital felony or a misdemeanor, fails to appear for trial, at the request of the State and after the State has affirmatively proven through substantial evidence that the defendant is willfully avoiding trial, the court may commence trial in the absence of the defendant. *** If trial had previously commenced in

the presence of the defendant and the defendant willfully absents himself for two successive court days, the court shall proceed to trial." 725 ILCS 5/115—4.1(a) (West 1998).

In *People v. Flores*, 104 Ill. 2d 40, 50, 470 N.E.2d 307 (1984), the Illinois Supreme Court found the two-day waiting requirement permissive, rather than mandatory:

"If the defendant chooses to walk out once his trial has commenced, his act can cause complete disruption of the court's docket. A judge would not know from case to case whether the defendant would appear or walk out during trial. A defendant should not benefit from his own defiance of the criminal justice system. We believe that if the statute is mandatory it unduly infringes upon the inherent powers of the judiciary. We therefore hold that the statute is permissive in nature rather than mandatory and therefore is not unconstitutional.

Since the statute is permissive, the trial judge, in his discretion, could decide whether to proceed."

Despite *Flores*, defendant argues the statute requires the State to prove through "substantial evidence" defendant willfully avoided trial before the trial may proceed. Defendant refers to the following portion of the statute:

"[A]t the request of the State and after the State has affirmatively proven through substantial evidence that the defendant is willfully avoiding trial, the court may commence trial in the absence of the defendant." 725 ILCS 5/115—4.1(a) (West 1998).

According to defendant, the State failed to satisfy its burden of proving he willfully avoided trial.

We first note that the provision of the statute cited by defendant refers to the *commencement* of a trial, not the *continuation* of a trial. 725 ILCS 5/115—4.1(a) (West 1998). In this case, defendant was present at the commencement of trial, but failed to appear on the second day of trial. The cited portion of the statute does not apply.

*Flores* clearly indicates that where a defendant fails to appear after his trial has commenced, the trial court has the discretion to choose to proceed. *Flores*, 104 Ill. 2d at 50. The supreme court did not find in *Flores* that the State was required to show defendant was willfully absent before the trial court could exercise its discretion to proceed. *Flores*, 104 Ill. 2d at 50.

Where the defendant is not present at the commencement of trial, the State is required only to make a *prima facie* showing that defendant's absence is willful. *Smith*, 188 Ill. 2d at 343. A *prima facie* showing is made where: (1) the defendant was advised of the trial date; (2) the defendant was advised that failure to appear could result in trial *in absentia*; and (3) the defendant did not appear for trial when the case was called. *Smith*, 188 Ill. 2d at 343.

In this case, the record shows defendant was present on the first day of trial, was advised of the time the trial was to recommence, and was not present on the second day of trial or at the sentencing hearing. The record also shows that on May 12, 1995, the trial court gave the defendant the following admonition:

> "Mr. Mendez, you understand if at some future date you fail to appear here we can go ahead without you, you would be giving up your right to confront the witnesses against you."

Defendant told the trial court he understood.

When defendant failed to appear on the second day of trial, the trial court noted the defendant lived less than three miles from the courthouse and said there was no evidence to suggest he suffered any illness or "foul play" that would keep him from appearing.

The only evidence to negate the *prima facie* elements outlined in *Smith* was the testimony of defendant's wife, given at the hearing on defendant's second motion for a new trial four years after he was convicted. The trial judge did not find that testimony believable. We see no reason to reject the trial judge's findings.

The facts of this case are almost identical to the facts in *Flores*, where the supreme court noted, "In the instant case, the defendant did not reappear for four years. Certainly, not waiting one more day and calling the case did not in any way prejudice the defendant." *Flores*, 104 Ill. 2d at 51. The defendant contends the trial judge acted with unseemly haste. While it may be better practice to take more of a breather when a defendant on trial does not appear, there is no indication in this case that waiting any longer would have accomplished anything. Based on the reasoning used in *Flores*, we find the trial court did not abuse its discretion by proceeding.

CONCLUSION

The trial court did not err in denying defendant's motion to suppress the physical evidence or in denying defendant's motion to suppress his oral statement. We also find the trial court did not abuse its discretion in proceeding with the trial in defendant's absence. The defendant's conviction and sentence are affirmed.

Affirmed.

CERDA and BURKE, JJ., concur.