**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 200335-U

Order filed June 29, 2022

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Mercer County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-20-0335 Circuit No. 18-CF-14 |
| JOSHUA D. SESSION, | ) ) | Honorable Gregory G. Chickris, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE O'BRIEN delivered the judgment of the court.
Justices Lytton and McDade concurred in the judgment.

**ORDER**

¶ 1     *Held*: Defendant's residential burglary conviction was reversed and remanded for a new trial when his trial was continued and held *in absentia*, despite no notice of the trial date by certified mail and no showing of willful absence.

¶ 2     The defendant, Joshua D. Session, appeals from his conviction of residential burglary and 10-year prison sentence.

¶ 3                              I. BACKGROUND

¶ 4    The defendant was charged by information with residential burglary (720 ILCS 5/19-3(a) (West 2018)). The information alleged that, on or about January 17, 2018, the defendant knowingly and without authority entered into a dwelling place located at 274 76th Street, Keithsburg, Illinois, with the intent to commit a theft. On December 18, 2018, the defendant's counsel presented the trial court with the defendant's jury trial waiver in 8 of the defendant's 10 pending cases, including the instant case. The trial court admonished the defendant regarding his right to a jury trial, and the defendant affirmed that he wanted to waive his right to a jury trial in all eight cases. The trial court then admonished the defendant:

"You understand once you give up your right to have a jury trial, it's pretty much gone, you can't just come back in and say 'I've changed my mind. I want a *** jury trial'? Once you waive it, you've waived your right to have a jury trial."

¶ 5    The defendant confirmed that he wished to waive his right and the trial court accepted his waiver. Later, the State elected to proceed with the instant case first. In the 10 months between the jury waiver and the first day of trial on October 30, 2019, the State filed three supplemental disclosures to the defendant, which included body camera footage, a list of additional witnesses, and interviews with codefendants Andrew Wilkens and Joshua Masters. Due to the additional discovery and three prior continuances, the State and the defendant agreed that the defendant would be released pending trial on a notice to appear. The notice to appear was issued on February 27, 2019, to the defendant at 403 SW 10th Ave., Aledo, Illinois. During the delay between the jury trial waiver and trial, Masters was seriously injured in a motorcycle accident.

¶ 6    The parties agreed that the victim, Mark Musick, would not testify at the trial and that police officers could testify that Mark was the owner of both cabins and identify the property. Anthony Baugh, a detective with the Mercer County Sheriff's Office, testified that he received a

2

call on January 26, 2018, requesting his assistance to process a crime scene where a break-in had been reported. The address was 274 and 276 76th Street, Keithsburg; Baugh testified that both addresses were hunting cabins, next door to each other. According to Baugh, the caretaker discovered the break-in and reported it. Baugh testified that the caretaker had not been there for 22 days. Baugh testified that the northern cabin (276) was being renovated. All the copper wire and pipe had been taken from cabin 276. Baugh testified that several pairs of chest waders, some tree stands, and other hunting equipment were taken from the southern cabin (274). The following day, Baugh received a tip from a confidential source regarding the stolen items, and Mark identified his belongings from photographs. Baugh applied for a search warrant and executed the warrant at the residence of Michael Ellis, finding some of the missing items. Baugh had identified a suspect at this point, Wilkens. When Baugh went to Wilkens' residence, Baugh could see a number of the missing items in plain view inside Wilkens' van. Wilkens implicated the defendant, and Wilkens informed Baugh that Masters possessed one of the stolen televisions. According to Baugh, Wilkens stated that the defendant contacted Wilkens in the early morning hours of January 17, 2018. Wilkens drove his van to the address to pick up the defendant. The defendant exited cabin 276 and loaded copper wire and pipe and other things into the van. Wilkens and the defendant were pulled over in a traffic stop, so Baugh could identify the date as January 17, 2018. Later that night, according to Wilkens, the defendant, Masters, and Wilkens returned to cabins 274 and 276, entered both buildings, and removed the rest of the property.

¶ 7        Baugh also testified that Masters said that Masters did not participate in the first burglary and that the defendant was not present when Masters and Wilkens went back later on January 17. The defendant was never found in possession of any of the stolen items. Baugh investigated local metal recycling places, and he found that Wilkens had cashed in some copper on January 17.

3

Wilkens directed Baugh to where a couple of the tree stands that were taken from cabin 274 had been dumped in a ditch. Baugh testified that cabin 274 was not a vacant, empty cabin. There was furniture, dishes, silverware, refrigerator, couches, beds, and dressers.

¶ 8        Wilkens testified that he was convicted of the residential burglary of cabin 274 and sentenced to the Department of Corrections. Wilkens had agreed to testify at the defendant's trial. Although Wilkens initially told detectives that he was not involved, Wilkens testified that he received a telephone call from the defendant in the early morning hours of January 17, 2018. The defendant asked Wilkens to come pick him up. Wilkens pulled up in front of the cabins, and the defendant entered the van with some wire and pipe. They were pulled over shortly after leaving the cabins. According to Wilkens, later the same day, Wilkens, Masters, and the defendant returned to the cabins. Wilkens saw the defendant go into at least one of the cabins, where there was a variety of hunting equipment. Wilkens thought the other cabin was the one where the pipe and wire came from. The three of them loaded up items from the cabins and brought most of it back to Wilkens' house and garage. None of the items were stored at the defendant's home.

¶ 9        Jacob Marlow, a sergeant with the Mercer County Sheriff's Department, testified that he was on patrol in the early morning hours of January 17, 2018. He noticed a white van running, parked outside cabins 274 and 276. After the van pulled away, Marlow stopped the van for having a broken taillight. Marlow was familiar with Wilkens and the defendant, as they identified themselves, and identified them as the driver and the passenger, respectively. Marlow did not notice any copper wire or tubing inside the van.

¶ 10        The trial court took the matter under advisement and continued the trial to allow for an affidavit or testimony from the owner on the issue of whether cabin 274 was a dwelling place. The defendant was advised by the court that he needed to return to court after the court received the

4

affidavit or Mark was set to testify, or the defendant would be waiving his right of confrontation and his right to present additional evidence in rebuttal. The defendant was also notified that there could be a continuation of the trial and decision without him present.

¶ 11    An affidavit from Nicholas Musick was filed on December 17, 2019. It stated that Nicholas's family owned 274 76th Street. Nicholas states in the affidavit that he personally met with the police at the scene, as he and his girlfriend were spending the weekend there together. Nicholas stated that he discovered the break-in and called the police. The property was a fully functioning residence and someone was there almost every weekend. However, since it was winter and there was remodeling, the property had been vacant for several weeks.

¶ 12    A notice to appear was issued to the defendant on January 7, 2020, sent via United States mail to the defendant at 715 Oak Street, New Boston, Illinois, and to the defendant's attorney. The notice to appear notified the defendant that his case was set for a trial verdict on January 21, 2020. According to the trial transcript from January 21, the defendant did not appear and the defendant's attorney was not sure that the Oak Street address was valid anymore. The defendant's attorney indicated that the State's notice was returned as undelivered. The trial court proceeded with accepting Nicholas's affidavit into evidence and returning a verdict, in the defendant's absence. The trial court found the defendant guilty and issued a warrant for his arrest. The address used on the arrest warrant was the address that was listed on the January 7, 2020, notice to appear, but the warrant was served on the defendant on February 10, 2020, at the 403 SW 10th Ave., Aledo, Illinois, address (the address listed on the February 27, 2019, notice to appear, when the defendant was released from custody). The defendant was sentenced to 10 years in the Department of Corrections.

¶ 13    II. ANALYSIS

¶ 14 The defendant challenges his conviction and his sentence on appeal. The defendant argues that: (1) the trial court erred in holding the remainder of the defendant's bench trial *in absentia*; (2) he did not knowingly, understandingly, and voluntarily waive his right to a jury trial; (3) the trial court erred in sentencing the defendant while under the misapprehension that the defendant was eligible for an extended term sentence; and (4) the defendant received ineffective assistance of trial counsel.

¶ 15 As to the first issue, the defendant argues that the trial court erred in completing the defendant's trial and announcing its verdict without the defendant's presence because the defendant was not notified of the trial date and his absence violated his constitutional right to be present at all critical stages of his trial. The State contends that the defendant forfeited the issue by failing to object at the time or raise the issue in a posttrial motion. The defendant counters that it was second-prong plain error. Alternatively, the State argues that the *in absentia* completion of the defendant's trial was proper because the defendant was notified of the continued hearing date but willfully chose to absent himself. Whether the court erroneously conducted the defendant's trial *in absentia* is a question of statutory construction, which we review *de novo*. *People v. Ramirez*, 214 Ill. 2d 176, 179 (2005).

¶ 16 It is clear that the defendant failed to properly preserve the issue for review: defense counsel did not object to proceeding in the defendant's absence and did not include the issue in the defendant's posttrial motion. See *People v. Lindsey*, 201 Ill. 2d 45, 53 (2002). The defendant argues for second prong plain error review. The plain error doctrine allows for a reviewing court to consider unpreserved error in limited circumstances. *People v. Grant*, 2019 IL App (3d) 170185, ¶ 27. Plain error under the second prong occurs when there is a clear or obvious error, which was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the

6

judicial process, regardless of the closeness of the evidence, so prejudice is presumed. *Id.*; Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). The first step in any plain error analysis is to determine whether any error occurred. *Grant*, 2019 IL App (3d) 170185, ¶ 27.

¶ 17    In general, as a constitutional matter, a defendant has a right to be present at all critical stages of his trial, from arraignment to sentencing. *People v. Phillips*, 242 Ill. 2d 189, 194 (2011); *Lindsey*, 201 Ill. 2d at 55. However, statutory law allows a defendant to be tried *in absentia* if properly admonished pursuant to section 113-4(e) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/113-4(e) (West 2018)) and properly notified pursuant to section 115-4.1 of the Code (*id.* § 115-4.1). *People v. Coppage*, 187 Ill. App. 3d 436, 442 (1989). The defendant argues that the trial *in absentia* was held in violation of the notice requirement set forth in section 115-4.1(a) of the Code, which provides:

> "(a) When a defendant after arrest and an initial court appearance for a non-capital felony or a misdemeanor, fails to appear for trial, at the request of the State and after the State has affirmatively proven through substantial evidence that the defendant is willfully avoiding trial, the court may commence trial in the absence of the defendant. *** If trial had previously commenced in the presence of the defendant and the defendant willfully absents himself for two successive court days, the court shall proceed to trial. *** The court may set the case for a trial which may be conducted under this Section despite the failure of the defendant to appear at the hearing at which the trial date is set. When such trial date is set, the clerk shall send to the defendant, by certified mail at his last known address indicated on his bond slip, notice of the new date which has been set for trial. Such notification shall be required when the defendant was not personally present in open court at the time when the case was set for trial." *Id.* § 5/115-4.1(a).

¶ 18        Our supreme court has held that where the defendant was not personally present in open court when a case was set for trial, strict compliance with the certified mailing requirement of section 115-4.1(a) of the Code is required. *Ramirez*, 214 Ill. 2d at 183. In this case, the defendant's criminal trial had already commenced, but the trial court continued the trial without setting a specific trial date. The date for the continued trial was to be set after the State notified the court administrator that it had received the owner's affidavit or the owner was available to testify. Thus, the defendant was not present in open court when the second trial date was set.

¶ 19        The State argues that section 115-4.1(a) of the Code was not applicable because the trial had already started and because the defendant agreed to the procedure that the continued trial date would be secured from the court administrator after the affidavit was obtained by the State. We find that, under the circumstances of this case, the defendant should have been notified by certified mail pursuant to section 115-4.1(a) of the Code before the trial was restarted in his absence. Although the defendant's trial had already commenced, his trial was not continued until later the same day but rather for an unknown number of days or weeks. Cf. *Coppage*, 187 Ill. App. 3d 436 (certified mail requirement of section 115-4.1(a) of the Code did not apply when trial had started but defendant did not return to court in the afternoon). Since the defendant was not personally present in open court when the trial date was set, section 115-4.1(a) of the Code required that the defendant be notified of the new date by certified mail before proceeding in his absence. See *Ramirez*, 214 Ill. 2d at 183 ("under the plain language of section 115-4.1(a) *** the requirement that such notice be sent to any defendant who was not personally present in open court when the case was set for trial is *mandatory*." (Emphasis in original.)). Thus, we conclude that the trial court erred in completing the defendant's trial *in absentia* without complying with the notice provisions of section 115-4.1(a) of the Code.

¶ 20 Alternatively, even if the certified mailing requirement was not mandatory, to establish a *prima facie* case that a defendant was willfully avoiding trial, the State had to "show that the defendant (1) was advised of the trial date; (2) was advised that failure to appear could result in trial *in absentia*; and (3) did not appear for trial when the case was called." *Ramirez*, 214 Ill. 2d at 184. There is no showing in the record that the defendant was advised of the continued trial date. The State mailed notice to the address listed on the defendant's arrest warrant, but the defendant was not arrested at that address, and defense counsel informed the trial court that the notice to appear had been returned undelivered to the State. When the defendant was released from custody, with bond conditions, on February 27, 2019, the defendant's address was listed as 403 SW 10th Ave., Aledo, Illinois, but the notice to appear was not sent to that address. Since the State did not show that the defendant was notified of the January 21, 2020, trial date, it did not establish a *prima facie* case that the defendant's absence was willful to allow trial in the defendant's absence.

¶ 21 The State argues that the defendant was not denied his constitutional right to be present at a critical stage, contending that the defendant had already agreed to the affidavit, and then the trial court just issued its verdict. However, the defendant only agreed to accept an affidavit in lieu of live testimony; he did not stipulate to the contents of the affidavit. Thus, evidence was offered against the defendant, and the contents of the affidavit could have altered the defendant's decision not to testify or bring in further evidence. As such, it was a critical stage of the proceeding. See *People v. Bean*, 137 Ill. 2d 65, 81 (1990) (defendant is not denied a constitutional right every time he is not present during his trial, but only when his absence results in a denial of an underlying substantial right, such as the right to present a defense).

¶ 22 Since the trial court erred in conducting a trial *in absentia* without complying with section 115-4.1(a) of the Code, and that failure of notice affected the defendant's substantial right to

9

present a defense, we reverse the defendant's conviction and remand for a new trial on the basis of second-prong plain error. See *Ramirez*, 214 Ill. 2d at 184 (strict compliance with the certified mailing requirement of section 115-4.1 of the Code cannot be harmless error).

¶ 23    Because our decision on the first issue is dispositive, it is not necessary to address the defendant's other arguments on appeal.

¶ 24                                                    CONCLUSION

¶ 25    The judgment of the circuit court of Mercer County is reversed and remanded.

¶ 26    Reversed and remanded.