2024 IL App (1st) 230637-U

No. 1-23-0637

Filed October 9, 2024

Third Division

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CR 2016 |
| | ) | |
| DEANGELO POWELLS, | ) | Honorable |
| | ) | Stanley J. Sacks, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Lampkin and Justice Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Notice to the defendant by certified mail was not required to resume a commenced and continued trial *in absentia*. Defendant waived his right to be present by his willful absence.

¶ 2    DeAngelo Powells was charged by indictment with aggravated domestic battery, aggravated battery, and misdemeanor domestic battery. Following a bench trial, the court found Powells guilty and sentenced him to a prison term of three years. On appeal, he argues (1) the court erred in proceeding with trial in his absence since the clerk did not notify him by certified mail of

the court date and (2) proceeding in his absence deprived him of his constitutional rights to be present and confront witnesses against him. We affirm.[1]

¶ 3                                    I. BACKGROUND

¶ 4        The charges against Powells stemmed from a January 22, 2022, altercation with K.T., the mother of his two children. The State alleged that Powells, *inter alia*, strangled K.T. by placing his hands on her neck, impeding her breathing.

¶ 5        After indictment, Powells first appeared before the circuit court in March 2022. He was released on bond. The court advised him that if he failed to appear on any future court date, he could be tried, convicted, and sentenced without being present and would forfeit his rights to see and hear the evidence against him, question witnesses, or present evidence in his defense. At a pretrial hearing on September 1, 2022, Powells indicated he wished to be tried by the court instead of a jury and agreed to commence trial on October 11, 2022.[2]

¶ 6        When the case was called on October 11 around noon, the State was ready to proceed but Powells was not present. Defense counsel informed the court that he had spoken with Powells and Powells had stated he believed the trial was scheduled for the following day but was in route. Powells arrived and the case was recalled at 1:35 p.m. Powells waived his right to be tried by a jury and the bench trial commenced.

¶ 7        The State's first witness was Powells's mother, Anneta. She testified that Powells and K.T. were at her apartment on the evening of January 22, 2022. Anneta observed the two in an altercation. K.T. had a hand on one of Powells's long braids and Powells was grabbing K.T.'s shirt near her chest. Anneta demonstrated Powells's grip by grabbing her own shirt. Anneta intervened

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

[2]The relevant proceedings in the circuit court occurred between September 2022 and February 2023. After first reference, we refer to each court date by month and day only.

to break up the altercation. Police officers arrived sometime later. Anneta admitted she told officers that Powells was choking K.T. before she separated them. On cross examination, Anneta testified that K.T. was unhappy that Powells had left the apartment to go to a store without her, but Anneta denied that K.T. argued with Powells upon his return.

¶ 8        Chicago Police Officer Tomas Gonzalez testified that he arrived at the apartment building in response to a call of a domestic disturbance. In the lobby, Officer Gonzalez discovered K.T., who was upset and crying. He noticed redness on her face and neck. Officer Gonzalez proceeded to the apartment where he met Powells and Anneta. Powells stated that he had choked K.T. Officer Gonzalez then authenticated a video of these events from his body worn camera (BWC).

¶ 9        The BWC video, which was published, depicts officers going to Anneta's apartment. Powells comes to the door and officers place him in handcuffs. Powells relates that he and K.T. had an argument. When told that K.T. reported that he had choked her, Powells states, "she wanted me to do that." Anneta, who is also present, tells an officer, "He choked her, and I stopped it." Later, Powells states, "I had to choke her because she had my neck like this," while bending his head to the side.

¶ 10        Chicago Police Detective Huan Lin testified that she met with K.T. on January 23, 2022, both at the apartment building and later at a police station. Detective Lin observed red marks on K.T.'s neck and bruising around her shoulder. Detective Lin took photos of K.T.'s injuries with a cell phone. She authenticated those photos, which depicted scratch marks and red marks on K.T.'s neck as well as bruising on her chin and shoulder. Following Detective Lin's testimony, the trial was continued to October 31, 2022.

¶ 11        Powells was not present when the case was called at 11:35 a.m. on October 31. Anneta was present and reported that Powells "had a nervous breakdown" and was admitted to St. Anthony

Hospital, but she expected him to be discharged in a few days. Defense counsel informed the court that the hospital confirmed Powells was admitted as a patient. The State's next witness, Dr. Devon Fiorino, was present. The case was continued for a status conference on November 9, 2022, at which Dr. Fiorino was excused from appearing.

¶ 12 Powells was absent again when the case was called on November 9. Defense counsel reported that he had communicated with Anneta by text message. Anneta related that she had dropped Powells off at the court building and believed he was there. The court revoked Powells's bond and issued an arrest warrant.

¶ 13 The following day, Powells appeared of his own volition. Defense counsel was not present and could not be reached. Powells explained to the court that he had come to the court building the previous day at 9 a.m. but found the door to the courtroom locked. He waited in the hall for over an hour before leaving for an appointment regarding housing. The court continued the case for another status conference on the following Monday, November 14, 2022, and advised Powells that if he failed to appear, the case would proceed without him, and he could be convicted and sentenced *in absentia*.

¶ 14 Powells appeared on Monday. The parties agreed to resume the trial on December 5, 2022. The court again admonished Powells that he could be found guilty and sentenced *in absentia* if he failed to appear on December 5. Powells responded that he understood.

¶ 15 Neither Powells nor his counsel appeared on December 5. The court noted that the clerk's system showed the case as scheduled for December 9 instead of December 5. Both the court and the prosecutor stated that they had written December 5 as the next court date for the case in their own notes. The prosecutor indicated that the State expected to proceed, and Dr. Fiorino was present and prepared to testify. The prosecutor stated that he spoke with defense counsel by phone, and

the parties had agreed to a continuance date of January 13, 2023. The court continued the case to that date for trial to resume.

¶ 16        Powells did not appear on December 9. The prosecutor stated the case was on the day's call in error and was already continued to January 13.

¶ 17        On January 13, defense counsel was present, but Powells was not, when the case was called at 11:00 a.m. Counsel requested a short recess to attempt to contact Powells. The court passed the case for thirty minutes. When recalled, counsel reported that he spoke with Anneta who stated, "I think he's on his way" but gave no further detail. The State noted that trial had commenced, and Powells had been admonished on November 14 to return on December 5 to resume the trial. Having failed to appear on December 5 and again on January 13, the State requested that the court find Powells's failure to appear willful and proceed with trial *in absentia*. The court recounted the procedural history of the case, noting that it had admonished Powells multiple times that he could be tried, convicted, and sentenced *in absentia* if he failed to appear. The court also observed that Dr. Fiorino had come to court twice before to testify in the matter. Over defense counsel's objection, the court found Powells's failure to appear willful and directed the State to proceed.

¶ 18        Dr. Fiorino testified that she treated K.T. in the early morning hours of January 23, 2022, at University of Chicago Hospital. K.T. reported that she had been beaten by her partner and specified that she had passed out due to strangulation. Dr. Fiorino ordered laboratory tests, prescribed pain medication, and discussed a safety plan with K.T. to ensure she had a safe place to go. The court *sua sponte* struck the testimony regarding K.T. identifying "her partner" as having beaten her.

¶ 19        Defense counsel cross-examined Dr. Fiorino. She agreed that the results of K.T.'s testing indicated no injury. Dr. Fiorino also testified that she prescribed Tylenol. The court sustained the

State's objection to a question regarding the hospital giving K.T. prenatal vitamins and baby formula. A nurse documented bruising to K.T.'s shoulder and Dr. Fiorino found that her neck and jaw were tender.

¶ 20      The State rested following Dr. Fiorino's testimony. Defense counsel moved for a directed finding of acquittal, which the court denied. Defense counsel then requested a continuance for Powells to testify, which the court also denied. After closing arguments, the court found Powells guilty of all three counts, merging the lesser charges into the aggravated domestic battery count. The case was continued for sentencing on February 10, 2023, and a warrant was issued for Powells's arrest.

¶ 21      Powells filed a *pro se* motion, which the clerk file stamped at 4:01 p.m. on January 13, 2023. On the motion, Powells wrote, "missed court." The motion was set to be heard on January 19. Powells appeared in court on January 19 without counsel. The court ordered him taken into custody and continued the matter to January 23.

¶ 22      Powells appeared on January 23 with counsel. Defense counsel recounted that the trial had been scheduled to resume on December 5, but he was unable to appear that day and sent another public defender to request a continuance. He then relayed the January 13 court date to Anneta, as he and Powells had agreed to communicate through her. Anneta had informed counsel that "the message was communicated." After the court concluded the trial *in absentia* on January 13, counsel informed Anneta that Powells had been found guilty and a warrant was issued for his arrest.

¶ 23      Powells asserted that he believed the court had instructed him to return for his trial on January 5, not December 5, emphasizing the point by stating, "I don't know nothing about December 5." He went on to explain that, on January 5, he came to the court building and sat in

the courtroom. Powells stated that he was told his name "wasn't on the list," so he left. He claimed he was not aware of the January 13 court date but came to the court building that afternoon after receiving word that the trial went forward without him.

¶ 24 The court stated that it did not believe Powells was unaware of the January 13 court date, but it would vacate the finding of guilt and allow Powells to testify "if there's a basis for [the court] to believe [the] possibility he wasn't aware." The matter was continued to February 10.

¶ 25 When the case resumed on February 10, the parties conferred for plea discussions with the court pursuant to Illinois Supreme Court Rule 402(d) (eff. July 1, 2012). Following those discussions, Powells declined to agree to a guilty plea with a recommendation of a two-year sentence under a lesser charge. The court asked Powells what he wanted to do, and Powells indicated that he wished to testify. The court stated that the convictions were "basically vacated for the time being" but may be reinstated. The parties recounted the procedural history and Powells reiterated that he believed he was told to return on January 5 and he was not aware of the January 13 court date until receiving word that day. He stated that communication through his mother was the only way to communicate with him. The court made no express findings regarding Powells's failure to appear on January 13 but stated that it properly proceeded *in absentia* that day. The court then indicated that it would allow the trial to resume for Powells to testify and the parties could stipulate to Dr. Fiorino's testimony, which Powells was not present for. Defense counsel did not so stipulate and reiterated his objection to the court's resumption of trial on January 13 *in absentia*, arguing that the State had not shown Powells's absence was willful.

¶ 26 Powells testified that he and K.T. were at Anneta's apartment on January 22. He left to buy some food. Upon his return, Powells and K.T. had a verbal disagreement. K.T. pulled his hair and he asked her to let go. Since K.T. did not let go, Powells "defended" himself. He gave no specific

explanation but alluded to self-defense "training." Powells admitted that he put his hands on K.T. and she let go. K.T. then left the apartment. On cross examination, Powells admitted that he put his hands on K.T.'s neck and squeezed, but explained he did so to make her let go of his hair. He did not believe he squeezed hard enough to prevent her from breathing.

¶ 27  The court again found Powells guilty of all three counts. After merging the lesser counts into the aggravated domestic battery count, the count sentenced Powells to three years' imprisonment. This appeal followed.

¶ 28                                      II. ANALYSIS

¶ 29  Powells raises two issues on appeal. First, he argues that the trial court erred in resuming his trial *in absentia* on January 13 since the clerk had not notified him of that court date by certified mail. Second, Powells argues that the resumption of his trial *in absentia* on January 13 violated his constitutional rights to be present and confront Dr. Fiorino.

¶ 30                     A. Was notice by certified mail required?

¶ 31  Powells's first claim is based on section 115-4.1(a) of the Code of Criminal Procedure of 1963 (725 ILS 5/115-4.1(a) (West 2020)), which provides for the commencement or continuation of trial in the defendant's absence. In relevant part, the statute states:

> "The court may set the case for a trial which may be conducted under this Section despite the failure of the defendant to appear at the hearing at which the trial date is set. When such trial date is set the clerk shall send to the defendant, by certified mail at his last known address indicated on his bond slip, notice of the new date which has been set for trial. Such notification shall be required when the defendant was not personally present in open court at the time when the case was set for trial." *Id*.

Our supreme court has determined that the statute's requirement for the clerk to send the defendant notice of the trial date by certified mail is a mandatory prerequisite to conducting a trial *in absentia*. *People v. Ramirez*, 214 Ill. 2d 176, 183 (2005).

¶ 32    The statute makes clear, however, that the mailing requirement is only required when "the defendant [fails] to appear at the hearing at which the trial date is set." 725 ILCS 5/115-4.1(a) (West 2020). In addition to the language quoted above, section 115-4.1(a) provides that "[i]f trial had previously commenced in the presence of the defendant and the defendant willfully absents himself for two successive court days, the court shall proceed to trial." *Id*. Based on the separate provisions, this court has determined that "the mailing provision [is] inapplicable to situations where trial has already begun." *People v. Coppage*, 187 Ill. App. 3d 436, 444 (1989). Thus, our precedent recognizes that the statute contemplates two distinct scenarios: one where the defendant is absent at the hearing where the trial date is set and one where trial has already commenced. The mailing provision applies in the former scenario but not in the latter. See *People v. Pontillo*, 267 Ill. App. 3d 27, 30 (1994) (following *Coppage*); *People v. McDonald*, 227 Ill. App. 3d 92, 97 (1992) (same).

¶ 33    Powells argues that our supreme court's *Ramirez* decision erased this distinction and effectively overruled *Coppage* when the court found that the mailing provision is mandatory. In Powells's reading, *Ramirez* requires the clerk to notify a defendant by certified mail of continued court dates even after trial has commenced. We disagree. In *Ramirez*, the defendant failed to appear at the hearing at which the court set the date for his trial to commence. *Ramirez*, 214 Ill. 2d at 178. The defendant was sent notice by regular, not certified, mail and failed to appear on his trial date. *Id*. The court found that the failure to strictly comply with the certified mailing provision rendered the court's commencement of trial *in absentia* error and required reversal of the conviction. *Id*. at

187. Significantly, the *Ramirez* decision only addressed the scenario where a defendant was not present at the hearing at which a trial date was set.

¶ 34    By contrast, this case presented the other scenario: where trial had already commenced. Powells was present at the September 1, hearing when his trial date was set, and trial commenced with him present on October 11. Thus, he was not in the same situation as the defendant in *Ramirez*. Since Powells's trial had already commenced, the mailing provision did not apply to any subsequent trial dates. Therefore, the clerk's failure to notify Powells by certified mail of the January 13 court date did not prevent the court from resuming trial *in absentia* on January 13, even though that date was set on December 5 in Powells's absence. Accordingly, we reject Powells's first claim.

¶ 35    We acknowledge that a panel of the Third District found that the certified mailing provision did apply to a continued trial date for a trial that had already commenced. See *People v. Session*, 2022 IL App (3d) 200335-U (unpublished order filed pursuant to Supreme Court Rule 23). Powells cites and relies on *Session*. We are unpersuaded, however, that the Third District's decision necessitates a similar result here. In *Session*, the Third District found that notice by certified mail was required for Session "under the circumstances of [his] case;" namely that the trial was continued for an indefinite "number of days or weeks" rather than a specific date. *Id*. ¶ 19. Session's trial was continued indefinitely on October 30, 2019, while the State obtained an affidavit from a witness who the parties agreed to excuse from testifying. *Id*. ¶¶ 5-6, 10. The continued trial date of January 21, 2020, was not set until January 7, 2020. *Id*. ¶¶ 5, 12. Thus, the Third District concluded that the certified mailing provision should apply due to the unique circumstances of that case. The court offered no explanation to support that the certified mailing provision should apply in all cases after trial has commenced. Indeed, the court noted that trial *in absentia* was appropriate

in *Coppage* without notice by certified mail in the circumstances of that case, but distinguished *Coppage* based on the differing circumstances presented by the facts in *Session*. *Id*. ¶ 19.

¶ 36    The circumstances that led the Third District to find that notice by certified mail was required in *Session* did not occur here. On December 5, the trial court continued Powells's trial to a definite court date of January 13. Defense counsel was aware of, and in fact agreed to, the January 13 court date at the time it was set. We also observe that, in *Session*, the Third District went on to find that the lack of any evidence that the defendant was advised of the continued trial date was an independent ground to find that the resumption of trial *in absentia* was error. *Id*. ¶ 20. Again, the circumstances here differ. Defense counsel acknowledged that he was aware of the January 13 trial date and had notified Powells through his mother, the method of communication counsel and Powells had agreed upon. The message from Anneta relayed by counsel on January 13 indicated that she had conveyed counsel's notice to Powells. For these reasons, we find *Session* distinguishable and hold that notice by certified mail was not required for the trial court to resume Powells's trial *in absentia* on January 13.

¶ 37    In his reply brief, Powells argues that even if the clerk was not required to notify him of the January 13 court date, the court erred by resuming trial in his absence since the State failed to establish that his absence was willful. Initially, we note that a party cannot switch positions and raise new arguments for the first time in a reply brief. *People v. Chatman*, 2016 IL App (1st) 152395, ¶ 40. Failure to include an issue in an initial brief results in forfeiture. *People v. Taylor*, 2019 IL App (1st) 160173, ¶ 41. Nevertheless, the issue is responsive to the State's argument that Powells waived his right to be present, which is relevant to Powells's second claim on appeal. Willful absence is tantamount to waiving the right to be present. Thus, we address the issue in the next section.

¶ 38                    B. Did trial *in absentia* violate the right to be present?

¶ 39        We turn to Powells's argument that the resumption of his trial *in absentia* on January 13 violated his constitutional rights to be present and to confront Dr. Fiorino. The State contends that Powells waived these rights by his willful absence. We agree.

¶ 40        "A  defendant waives the right to be present when  the  defendant  voluntarily  absents himself or herself from trial." *People v. Smith*, 188 Ill. 2d 335, 341 (1999). The analysis of whether a defendant waived their right to be present naturally corresponds with whether the trial court properly proceeded with trial *in absentia*. A trial court's decision to proceed with a trial *in absentia* will  not  be  reversed  unless  the  trial  court  abused  its  discretion. *Id*.  "A  trial court abuses its discretion only when its ruling is arbitrary, fanciful, or unreasonable, when no reasonable person would take the view adopted by the trial court, or when its ruling rests on an error of law." *People v. Johnson*, 2018 IL App (2d) 160674, ¶ 10.

¶ 41        As noted, section 115-4.1(a) provides that "[i]f trial had previously commenced in the presence of the defendant and the defendant willfully absents himself for two successive court days, the court shall proceed to trial." 725 ILCS 5/115-4.1(a) (West 2020). Our supreme court has determined that this provision is permissive rather than mandatory. *People v. Flores*, 104 Ill. 2d 40, 50 (1984). In other words, when a defendant fails to appear after his or her trial has commenced, the trial court has the discretion to choose to proceed and need not wait two days before resuming trial. *Id*. For the court to proceed in these circumstances, the State is required only to make a *prima facie* showing that defendant's absence is willful. *People v. Mendez*, 322 Ill. App. 3d 103, 115 (2001). The State establishes a *prima facie* case of willful absence when the defendant: (1) was advised of his or her trial date, (2) was advised that the failure to appear could result in him or her being tried *in absentia*, and (3) did not appear for trial. *Smith*, 188 Ill. 2d at 343.

¶ 42     Here, it is undisputed that Powells was admonished multiple times as to the consequences of failing to appear and that he did not appear on January 13 by 11:30 a.m. when the court determined to resume the trial *in absentia*. What is disputed, and the pivotal question for this analysis, is whether Powells was advised of his court date. We find that this element was satisfied when the court advised defense counsel of the January 13 court date, which counsel agreed to on December 5 and represented that he conveyed to Powells.

¶ 43     It is well established that notice to counsel constitutes notice to the client regardless of whether counsel actually communicates such knowledge to the client. *In re D.R.*, 307 Ill. App. 3d 478, 482 (1999). We believe this principle applies in this case. Trial had already commenced and Powells was advised on November 14 to return to court to resume the trial on December 5. He failed to appear on December 5. Although the clerk's system erroneously indicated December 9 as the next trial date, neither Powells nor his counsel attributed his failure to appear on December 5 to the clerk's error. To the contrary, Powells claimed he was advised by the court to appear on January 5. His claim is positively rebutted by the record, which demonstrates that the court advised him to appear on December 5. It is of no moment that the trial would not have resumed on December 5 due to defense counsel's absence. Powells was not excused from appearing that day. In these circumstances, to require additional notice to Powells of the next court date—above and beyond notice to counsel—would both reward Powells for his willful failure to appear on December 5 and impose an unreasonable burden on the State that neither section 115-4.1 nor our case law requires.

¶ 44     In addition, section 115-4.1 affords a defendant convicted *in absentia* an opportunity to rebut the *prima facie* showing of willful absence and obtain a new trial by showing that the defendant's failure to appear was without their fault and due to circumstances beyond their control.

725 ILCS 5/115-4.1(e) (West 2020). Powells's *pro se* motion filed at 4 p.m. on January 13 essentially amounted to a request for relief pursuant to this provision. At subsequent proceedings on January 23 and February 10 when the matter was addressed, Powells failed to make the requisite showing. Although Powells protested that he was unaware of the January 13 court date, the court did not find him credible. That finding was reasonable since Powells's claim that he was advised of a January 5 court date rather than December 5 was plainly false. In addition, he twice appeared at unscheduled times promptly after missing scheduled court dates where warrants were issued for his arrest, suggesting he was purposefully avoiding trial. Further, counsel represented that he had informed Powells of the January 13 date through his mother and Powells acknowledged that communication through his mother was the proper way for counsel to communicate with him. If communication failed to reach him, it is not without his fault or outside of his control, since he agreed to rely on such an arrangement.

¶ 45    In sum, the State established a *prima facie* showing that Powells's absence on January 13 was willful, Powells waived his right to be present, and the court did not abuse its discretion in choosing to proceed *in absentia*.

¶ 46                                  III. CONCLUSION

¶ 47    For these reasons, we affirm the judgment of the circuit court.

¶ 48    Affirmed.